## UNITED STATES v. PECK et al.

### No. 2541–B.

United States District Court, D. Alaska,
First Division.   Juneau.

Feb. 15, 1951.

P. J. Gilmore, Jr., U. S. Atty., Stanley D. Baskin, Asst. U. S. Atty., Juneau, Alaska, for plaintiff.

Wm. L. Paul, Jr., Juneau, Alaska, for defendant.

FOLTA, District Judge.

Defendants were convicted in the Justice Court for Juneau Precinct of fishing

commercially for salmon within 500 yards of the mouth of Peterson Creek, in violation of Section 4 of the Act of Congress of June 6, 1924, 43 Stat. 466, for the protection and regulation of the fisheries of Alaska, as amended, 48 U.S.C.A. 232.

The sole question involved on appeal to this Court is what constitutes the mouth of a stream. So far as pertinent, Section 232 provides that: "It shall be unlawful to fish for, take, or kill any salmon * * * within five hundred yards of the mouth of any * * * creek, stream, or river over which the United States has jurisdiction * * *."

Section 3 of the aforesaid act, 48 U.S.C.A. § 233, prohibiting the erection or maintenance of any dam, barricade fence, trap, fish wheel or other fixed or stationary obstruction within 500 yards of the mouth of any creek, stream or river into which salmon run, contains the following: "For the purposes of this section, the mouth of such creek, stream, or river shall be taken to be the point determined as such mouth by the Secretary of the Interior and marked in accordance with this determination."

Notwithstanding the apparent limitation of this provision to Section 3, 48 U.S.C.A. § 233, it was held in Booth Fisheries Co. v. United States, 9 Cir., 6 F.2d 500, 501, that it also applies to Section 4, 48 U.S.C.A. § 232.

It is conceded that the mouth of Peterson Creek was not marked as required by the act, but it appears that in 1944 the Secretary of the Interior, acting under the power vested in him by the act of June 26, 1906, 34 Stat. 480, as amended, 48 U.S.C.A. § 239, promulgated a regulation which, in its present form, 50 C.F.R. 102.14, provides that: "Where the closed area at the mouth of a stream has not been designated by signs erected by the Fish and Wildlife Service and where the extent of the closed area is fixed by measurement from the mouth of a stream, the mouth of such a stream shall be at a line between the extremities of its banks at mean low tide."

This regulation, so it is said, was necessitated by the fact that it was impossible to mark the mouth of every stream, creek and river in the Territory into which salmon run.

Defendants contend, however, that this regulation does not relieve the Secretary of the requirement, after determining the mouth, of marking it in accordance with such determination. Defendants also contend that the mouth of Peterson Creek under the regulation quoted is not where the prosecution asserts it is, at the point where the stream empties into the waters of Eagle Harbor at mean low tide, but where it empties into a tidal basin immediately to the east of Eagle Harbor with which it is connected by a short channel, through which the tidal currents flow during extreme high tides only and through which Peterson Creek flows at all other times into Eagle Harbor and that hence the defendants' fishing operations were not within the prohibited distance of the mouth. This tidal basin differs from the channels of the ordinary rivers and streams, up which the tidal current flows for a considerable distance at the height of the tide, only in that at the seaward end of the basin there is a barrier which traps water within the basin and over which the water cascades down to Eagle Harbor.

I am of the opinion that this barrier neither converts what is essentially a fresh water lake into a part of the tidal waters of Eagle Harbor merely because at extreme high tides the current ebbs and flows through the channel referred to, nor requires the Court to hold that the mouth is at the upper end of this tidal basin, not only because there can be no mean low tide line in the basin—an essential element of the definition of a mouth of the stream—but also because the controlling consideration in determining the mouth of the stream is not topography but the protection of the fisheries. It is a matter of common knowledge, of which the Court takes judicial notice, that the reason for prohibiting commercial fishing within 500 yards of the mouth of streams is that such salmon as succeed in running the gauntlet of traps and other types of gear, school at the mouths of the streams for considerable periods before ascending them to spawn. To

hold that the mouth of Peterson Creek is where it flows into the basin would be to deprive salmon of this protection. It is necessary to assure the continuance of such sanctuaries for salmon that in each instance the mouth be determined by the line of low tide, whether it be immediately adjacent to the upland or several miles to the seaward at the edge of extensive tide flats, otherwise, if the line of high tide were used, although it would obviate all difficulty, not only would such sanctuaries be wiped out but also fishing would be permitted in places where it has always been prohibited—the streams themselves. I conclude, therefore, that under the regulation quoted the mouth of Peterson Creek is where the waters thereof empty into Eagle Harbor at mean low tide which, it is conceded, is within 150 feet of where the defendants were apprehended in their fishing operations.

■■ But since the line of mean low tide is itself extremely difficult, if not impossible, of determination with precision and must, therefore, remain largely a matter of guesswork, the result varying with each individual, it is obvious that the determination of the mouth of a stream will vary accordingly. Unless, therefore, the mouth as determined by the Secretary is marked, fishermen would not only not be able to determine the limits of the closed area, but the regulation itself would be lacking in that certainty which is a requisite of any penal statute and without which there can be no conviction or forfeiture. Presumably it was in recognition of this principle that Congress, in Section 3 of the act of June 26, 1906, 48 U.S.C.A. § 233, provided that the mouth shall be marked in accordance with the determination made. The question which is determinative of this controversy, therefore, is whether the Secretary may, by regulation, substitute for this statutory requirement that the mouth be marked, a definition of the month. This would appear to depend on whether such definition would enable the fishermen to determine the mouth as readily as if it had been marked. Obviously a definition of the kind embodied in 50 C.F.R., Section 102.14, which requires the determination of the

line of mean low tide and of the meaning of the words "extremities of the banks" is not only extremely difficult to apply and uncertain, but cannot be said to be the equivalent of visible marks, such as signs, signals or buoys, clearly contemplated by the statute.

The judgment of the Justice Court is accordingly reversed.