## UNITED STATES v. JOHNSON et al.

## UNITED STATES v. PAUL et al.

### Nos. 2570–B, 2569–B.

District Court, Alaska.
First Division, Juneau.
Oct. 9, 1952.

P. J. Gilmore, Jr., U. S. Atty., Edward A. Merdes, Asst. U. S. Atty., Juneau, Alaska, for plaintiff.

William L. Paul, Jr., Juneau, Alaska, for defendant.

FOLTA, District Judge.

The foregoing cases have been consolidated on appeal to this Court from judgments of conviction in the Justice Court for Juneau Precinct. The facts constituting the offense charged in each case—that of fishing within the prohibited distance of the mouth of a stream, are admitted, but it is contended that the regulation alleged to have been violated, Section 102.14 of the Commercial Fisheries Regulations for 1952, is not valid because in neither case has the determination of the mouth of the stream been made by the Secretary and no power has been given him to delegate this authority.

Section 4 of the Act of Congress of June 6, 1924, 43 Stat. 466, 48 U.S.C.A. § 232, prohibit fishing for, taking or killing any salmon within 500 yards of the mouth of any creek, stream or river. Section 3 of that Act, 48 U.S.C.A. § 233, declares that:

"For the purposes of this section, the mouth of such creek, stream, or river shall be taken to be the point determined as such mouth by the Secretary of the Interior and marked in accordance with this determination."

To effectuate the foregoing provision, the Secretary of the Interior promulgated the regulation quoted, which reads as follows:

"Section 102.14—Closed areas near salmon streams.

"(a) Commercial fishing is prohibited at all times between the exposed tideland banks of any salmon stream, within 500 yards of the terminus, as defined herein, of any such stream and within such greater distances from such terminus as may be specified in regulations having particular application to designated streams or areas. For the purpose of these regulations the word 'terminus' shall mean a line drawn between the seaward extremities of the exposed tideland banks of any salmon stream.

"(b) For the purposes of Section 3 of the Act of June 6, 1924 (43 Stat. 464; 48 U.S.C. § 233), as amended, the mouth of any salmon creek, stream or river is determined to be at a line drawn between the extremities of its banks at mean low tide. The facts as to the location of any such line shall be ascertained from time to time by the Director of the Fish and Wildlife Service and such other persons as may be designated by the Director and in accordance therewith the mouth of such creek, stream or river shall be appropriately marked and such marking shall be final."

In United States v. Peck, 9 Cir., 95 F. Supp. 465, this Court held that the determination of the mouth of a stream, without a marking of it, is not a sufficient compliance with the statute. In the instant cases the mouths of the streams had been determined and marked. Both parties agree that there has been a delegation, but disagree whether such delegation was authorized, the plaintiff apparently contending that such power exists by necessary implication. Implicit in these contentions is the assumption that the function is discretionary. But since the nature of the function is not discussed, it would appear that there is a misconception of the legal problem. The controversy turns not on whether there has been an express or implied delegation of the authority to determine the mouth of a stream, but on whether the function is discretionary or ministerial. It would then seem more appropriate to say that while the question of delegation lurks in the background, it is really not involved.

This view of the controversy requires a consideration and discussion of the nature of the function involved. The objective of the statutes, 48 U.S.C.A. §§ 220–247, is the protection and conservation of salmon. The prohibition against fishing within 500 yards of the mouth of any creek, stream or river is necessitated by the fact that salmon school at the mouths thereof prepar-

692

atory to ascending them to the spawning grounds. Only those salmon which have successfully run the gauntlet of intensive fishing by gear and trap on their long journey from the ocean to the spawning grounds ever reach the sanctuary of the closed area at the mouth of the stream to which their instinct guides them. Without this sanctuary, few would ever reach the spawning ground. The absolute prohibition of fishing in streams is not enough to protect them during this period and hence it was necessary to include the waters at the mouths of creeks, streams and rivers within such prohibition. In defining the mouth of a stream controlling weight must be given to the objective of the statutes—the protection and conservation of salmon. If the mouth were defined to be that point at which the waters of the stream meet tidewater at high tide, 500 yards might not suffice to embrace at low tide the waters containing such schools of salmon in cases where the tide, because of extensive tide-flats, recedes more than that distance. To obviate this, it was necessary to define the mouth to be at the line of mean low tide, between the extremities of the banks of the stream, as was done by Regulation 102.14. If this still does not suffice, the Secretary may reserve a larger area under the power conferred upon him by Section 1 of the Act referred to, 48 U.S.C.A. § 221.

The question presented, therefore, is whether the determination of this line, in accordance with the standard thus laid down, is a discretionary function which must be performed by the Secretary himself, in the absence of express power authorizing its delegation to his subordinates. The defendant contends that the word "determine" as used in the Act is a word of art, which imparts to the task a judicial rather than an administrative character, from which it would follow that the Secretary would have to make a judicial determination of the mouth of each stream. It is inconceivable that Congress intended to impose such an insuperable task on the Secretary. To so hold would be to elevate a commonplace chore to the plane of a judicial function without serving any use-

ful purpose. Unquestionably the term "determine" was used in the sense of "define". Having exercised whatever discretion may be involved in prescribing the rule by which the mouth of a stream shall be ascertained, all that remains to be done in any case is to determine the line of mean low tide. That the result in some cases may be lacking in technical accuracy is of no moment. In the establishment of a closed area, precision in the establishment of its boundaries is not required.

It is obvious, therefore, that the ascertainment of the line of low tide with the subsequent marking, is a mere ministerial function. State ex rel. Skrainka Const. Co. v. Reber, 226 Mo. 229, 126 S.W. 397; School District No. 3 v. Callahan, 237 Wis. 560, 297 N.W. 407, 135 A.L.R. 1081; Cf. Doe ex dem. Barbarie v. Eslava, 9 How. 421, 13 L.Ed. 200; Miller v. Mayor of City of New York, 109 U.S. 385, 393, 394, 3 S.Ct. 228, 27 L.Ed. 971.

Accordingly, I find the defendants guilty.