## UNITED STATES v. PECK et al.
### No. 2573–B.

District Court, Alaska,
First Division, Juneau.

Dec. 15, 1952.

P. J. Gilmore, Jr., U. S. Atty., and Edward A. Merdes, Asst. U. S. Atty., Juneau, Alaska, for plaintiff.

William L. Paul, Jr., Juneau, Alaska, for defendant.

FOLTA, District Judge.

This case is before me on appeal from a judgment of conviction of the Justice Court for Juneau Precinct, where the defendants, admitting the acts charged in the complaint, contended, according to the transcript of that court, that the regulation alleged to have been violated was invalid. On appeal the trial is de novo.

The complaint alleges that on September 25, 1952, the defendants fished commercially for salmon within 500 yards of the mouth of a salmon stream in Hood Bay, in violation of the Act of June 6, 1924, 43 Stat. 466, as amended, 48 U.S.C.A. § 232;

and Section 102.14 of the commercial fisheries regulations for 1952, 16 F.R. 215.

September 25 was the opening date of the fall season for commercial salmon fishing. The Fish and Wildlife Service vessel Pelican was patrolling the waters of that area for the purpose of enforcing the law and regulations thereunder. Discovering that the markers for the stream involved were down, Capt. Collins, master of the Pelican, anchored approximately 500 yards off the mouth, according to his computation by aid of the chart, for the specific purpose of enforcing the provisions of law prohibiting commercial fishing within 500 yards of the mouth of any creek, stream or river, 48 U.S.C.A. §§ 232–233, and radioed headquarters that the markers were down. About a dozen fishing vessels were then in that arm of Hood Bay. The Fish and Wildlife Service vessel Grizzly Bear, then engaged in inspecting and renewing markers in the vicinity, arrived at the scene the next day and replaced the markers.

In the meantime, however, the defendants' vessel started to make a set with its seine between the Pelican and the mouth of the creek. The Pelican blew a warning blast of its whistle: the defendant Peck came alongside and was told by Capt. Collins that he couldn't fish there because it was too close to the mouth of the stream; and his attention was directed to the fact that the Pelican itself was only about 500 yards from the mouth. The defendant Peck asked where the markers were and was told that they were down. Peck then reminded Collins that once before in a similar case, United States v. Peck, D.C., 95 F.Supp. 465, he was acquitted because the markers were not set up. Collins told him the Grizzly Bear was due that evening to replace the markers.

The defendant Peck's version of this conversation does not differ in any material respect.

Notwithstanding this warning and the presence of the Pelican at approximately 500 yards from the mouth of the stream, the defendants set their seine roughly between the Pelican and the mouth of the stream referred to and caught 213 salmon.

Upon the arrival of the Grizzly Bear the next day, the mouth of the stream was ascertained, in accordance with the regulation 102.14(b), and the distance from the mouth to the Pelican was found to be 530 yards by actual measurement.

The arrest of the defendants followed.

Upon the trial in this Court, the defendants, relying on Booth Fisheries Company v. United States, 9 Cir., 6 F.2d 500 and United States v. Peck, supra, contended: (1) that there can be no conviction for fishing within 500 yards of an unmarked stream; (2) that the determination of the mouth of a stream may be made only by the Secretary of the Interior and that this duty is nondelegable, and (3) that the place at which they fished was more than 500 yards from the mouth of the stream.

When the case first cited was decided, there was no regulation such as 102.14(b), defining the mouth of a stream. Plaintiff argues that this fact alone suffices to distinguish it from the instant case and urges upon the Court the view that once markers are put up, the law does not require their maintenance, adding that the markers are often destroyed by violators. This view, if accepted, would require the Court to overrule its decision in the Peck case, supra, unless it should be held that Section 102.14 (a) governs in the absence of markers.

The arguments made to the Court on behalf of the defendants that it is impossible to mark the mouths of some streams, like the argument on behalf of the prosecution that it is impossible to continuously maintain the markers because of the elements and wilful destruction by violators, is one that should be addressed to Congress.

It may be conceded that a definitive marking of the mouth of a stream where the shore line is fairly straight for a considerable distance and the tide flats extensive, is impossible. Nevertheless, as was pointed out by the Court in Booth Fisheries Company v. United States, there must be some initial point from which the 500 yards may be reckoned and this is the ratio decedendi of United States v. Peck, supra.

Section 3 of the statute referred to, 48 U.S.C.A. § 233 provides that:

"For the purposes of this section, the mouth of such creek, stream, or river shall be taken to be the point determined as such mouth by the Secretary of the Interior and marked in accordance with this determination."

Section 102.14(b) prescribes how the mouth of rivers, streams and creeks shall be determined, in the following language:

"For the purposes of Section 3 of the Act of June 6, 1924 (43 Stat. 464; 48 U.S.C. 233), as amended, the mouth of any salmon creek, stream or river is determined to be at a line drawn between the extremities of its banks at mean low tide. The facts as to the location of any such line shall be ascertained from time to time by the Director of the Fish and Wildlife Service and such other persons as may be designated by the Director and in accordance therewith the mouth of such creek, stream or river shall be appropriately marked and such marking shall be final."

The contention that the determination of the mouth of a creek, stream or river must be made by the Secretary of the Interior only was disposed of adversely to the defendants in United States v. Johnson (United States v. Paul), D.C., 107 F.Supp. 690. The contention that the markers must be up before a conviction may be had may have merit, but it is my opinion that this controversy turns not on the presence or absence of markers but on whether the presence of the Pelican, anchored approximately 500 yards off the mouth because of the absence of markers, coupled with her warning to the defendants that the area between was closed to fishing, is sufficient in the absence of markers. The defendants' testimony that they fished in an adjoining area is not only in sharp conflict with that given by witnesses for the prosecution but is further contradicted by their admission in the Justice Court and in the letter to the Clerk of this Court, plaintiff's exhibit No. 2, that they fished within 500 yards of the

mouth of the stream. Since no such testimony was introduced in the Justice Court, it would appear that the defendants must have been assailed by doubts as to the soundness of their original position and concluded to offer testimony to the effect that the fishing was done outside of the 500 yard area. I am inclined to the view that the pretermission of this defense in the Justice Court is a circumstance which warrants giving it but slight weight here.

It is my opinion that the presence of markers is not indispensable where those charged with the enforcement of the fisheries laws warn the violator, or he otherwise has knowledge or believes, that he is in a prohibited area. Thereafter he acts at his peril just as he does when, with markers on the shore, he underestimates the distance. Cases involving the shooting of game within a prohibited distance of any highway present a close analogy. In each instance the law merely requires a point from which the measurement may be made.

Belatedly the prosecution makes the point that where there are no markers, the situation is governed by Section 102.14(a) of the regulations reading as follows:

"Commercial fishing is prohibited at all times between the exposed tideland banks of any salmon stream, within 500 yards of the terminus, as defined therein, of any such stream and within such greater distances from such terminus as may be specified in regulations having particular application to designated streams or areas. For the purpose of these regulations the word "terminus" shall mean a line drawn between the seaward extremities of the exposed tideland banks of any salmon stream."

which it asserts was promulgated pursuant to the authority conferred by 48 U.S.C.A. § 223, which provides:

"The right herein given to establish fishing areas and to permit limited fishing therein shall not apply to any creek, stream, river, or other bodies of water in which fishing is prohibited by specific provisions of sections 221–228 and 232–234 of this title, but the Secretary of the Interior through the creation of such areas and the establishment of closed seasons may further extend the restrictions and limitations imposed upon fishing by specific provisions of the above-mentioned sections or any other law."

It may be that this regulation may be upheld as a valid exercise of the power conferred and that the definition contained in it furnishes as good a criterion as markers placed on the upland or shore at some distance from the mouth, the distance necessarily varying with the extent of the tide flats and the contour of the shore and that, therefore, it suffices to meet the test laid down in Booth Fisheries Company v. United States, supra, but in view of the conclusion reached it is unnecessary to pass on this contention.

I find that the defendants fished within 500 yards of the mouth of the stream referred to and, hence, find them guilty.