Antonin BERAN, Appellant,

v.

STATE of Alaska, Appellee.

Gary CARLOS, Appellant,

v.

STATE of Alaska, Appellee.

Peter MOST, Appellant,

v.

STATE of Alaska, Appellee.

Williard PARK, Appellant,

v.

STATE of Alaska, Appellee.

Ralph BORS, Petitioner,

v.

STATE of Alaska, Respondent.

Elizabeth IANI and David Iani, Petitioners,

v.

STATE of Alaska, Respondent.

John JENSEN, Kurt Kvernick, Dennis O'Neill, and Larry Hendricks, Petitioners,

v.

STATE of Alaska, Respondent.

Paul MORENO and Paul Zackar, Petitioners,

v.

STATE of Alaska, Respondent.

Sam WHITTEN, Robert H. Blake, and Mark I. Hutton, Petitioners,

v.

STATE of Alaska, Respondent.

Nos. A–535, A–679, A–629, A–630, A–668, A–652, A–638, A–658 and A–727.

Court of Appeals of Alaska.

Sept. 6, 1985.

Marcia Vandercook, Anchorage, and William Bixby, Valdez, for Antonin Beran.

Frederick Torrisi and David B. Snyder, Dillingham, for Peter Most, Williard Park and Gary Carlos.

Frederick Torrisi and David B. Snyder, Dillingham for Ralph Bors.

Melvin M. Stephens, II, Hartig, Rhodes, Norman, Mahoney & Edwards, Kodiak, for David and Elizabeth Iani.

Jeffrey M. Feldman, Gilmore & Feldman, Anchorage, for John Jensen, Dennis O'Neill, Kurt Kvernik and Larry Hendricks.

Bridgette E. Siff, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for Paul Moreno and Paul Zackar.

Lewis F. Gordon, Anchorage, for Sam Whitten, Robert H. Blake, Mark I. Hutton.

W.H. Hawley, Asst. Atty. Gen., Anchorage, G. Scott Sobel, Asst. Dist. Atty., Russell S. Babcock, Asst. Dist. Atty., Victor C. Krumm, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for the State of Alaska.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

After separate trials, Antonin Beran, Gary Carlos, Peter Most, and Williard Park were convicted of violating regulations adopted by the State Board of Fisheries. The offenses occurred after the effective date of Fish and Game Regulation 5 AAC 39.002 which provides:

*Liability for Violations.* Unless otherwise provided in 5 AAC 01–5AAC 41 or in AS 16, a person who violates a provision of 5 AAC 01–5 AAC 41 is strictly liable for the offense, regardless of his intent.

In reliance on this regulation, the trial court in each case applied a strict liability standard.[1] Each of the four appellants was convicted on the basis that he was strictly liable for having some length of net in the water after the closing of the fishery, notwithstanding the fact of mechanical problems encountered while hauling in the net. They now appeal, contending that the legislature has not authorized the Board of Fisheries to make violations of its regulations strict liability offenses. They also argue that if the legislature had authorized the Board of Fisheries to adopt strict liability regulations the regulations are unconstitutional.[2]

Ralph Bors and the petitioners, charged with fishing violations, sought pretrial determinations from Judges Victor D. Carlson and J. Justin Ripley that 5 AAC 39.002 was invalid. Upon denial of their request, they petitioned for review raising essentially the same arguments as Beran.[3] Finding that the issues presented were of sufficient significance to warrant immediate resolution, we granted the petitions for review. We consolidated all of these cases with *Beran.* Appellate Rule 402(b)(2).

Having carefully reviewed the Alaska statutes dealing with administrative crimes and having considered the parties' oral arguments and their briefs on the law, we conclude, first, that the legislature has

---

1. In *Beran,* the court refused to instruct the jury that *mens rea* (literally, a guilty mind) was an element of the offense. In each of the three other cases on appeal, the court denied a pretrial motion for an instruction that would require a jury to find (at a minimum) negligence in order to convict. That motion being denied, the three men consented to bench trials.

2. Beran also urges that this court declare 5 AAC 39.002 invalid because the regulation was adopted allegedly without satisfying the notice requirements of the Alaska Administrative Procedures Act. AS 44.62.200. As Beran did not make this argument at trial nor did he list the issue in his statement of points on appeal, we will not consider this issue on appeal.

3. Elizabeth and David Iani also argue that Judge Carlson abused his discretion in denying their motion for a change of venue from Naknek to Kodiak. AS 22.10.030(d). We decline to decide the venue issue at this juncture. If the Ianis are ultimately convicted, they may pursue this issue on appeal.

authorized the Board of Fisheries to make the breach of a regulation a "violation" and a strict-liability offense which would be punishable by a noncriminal fine.[4] Second, we are satisfied that the legislature has authorized the Board of Fisheries to constitute the breach of a regulation a crime[5] which would be punishable by imprisonment, but only if *mens rea* is required. Where a higher degree of *mens rea* is not specified in a regulation we will continue to infer a negligence requirement as a predicate to a sentence of imprisonment. *See Reynolds v. State*, 655 P.2d 1313 (Alaska App.1982). Third, we conclude that the legislature has not authorized the Board to adopt a regulation if a violation of the regulation would subject the violator to the statutory penalty of imprisonment in the absence of a finding of *mens rea*. We therefore need not consider the parties'

constitutional arguments except to the extent that an understanding of the constitution helps us to determine the legislature's intent in authorizing agencies to adopt regulations whose violation subjects violators to civil and criminal penalties.

 Applying these principles to 5 AAC 39.002, we accept the state's representation that the Board of Fisheries intended to make violations of the described fishing regulations strict liability offenses to the extent permitted by the legislature including, if authorized, imprisonment as a possible penalty. Under our reading of the relevant statutes, imprisonment is not a permissible penalty for a violation of a regulation based upon strict liability in the absence of express legislative authorization. However, imprisonment is a permissible penalty for violation of a regulation

---

**4.** We use the term "violation" as it is defined in AS 11.81.900(b)(56):

> "Violation" is a noncriminal offense punishable only by a fine, but not by imprisonment or other penalty; conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime; a person charged with a violation is not entitled
>
> (A) to a trial by jury; or
> (B) to have a public defender or other counsel appointed at public expense to represent him;

*See also* AS 11.81.250(a)(6) (violations are offenses "'which characteristically involve conduct inappropriate to an orderly society but do not denote criminality in their commission'"). Violations are thus quasi-criminal. *See State v. Clayton*, 584 P.2d 1111, 1113 n. 4 (Alaska 1978).

We use the term "noncriminal" fine to exclude fines "so heavy" that they indicate criminality. The distinction between "criminal" and "noncriminal" fines is made in a number of Alaska Supreme Court decisions which consider offenses for which a right to jury trial and the appointment of counsel attach. *See Alexander v. Anchorage*, 490 P.2d 910, 915 (Alaska 1971) (right to counsel) and *Baker v. Fairbanks*, 471 P.2d 386, 402 (Alaska 1970) (jury trial). Criminal prosecutions are defined to include those prosecutions whose penalty may include a period of imprisonment, the loss of a valuable license, or a fine so heavy that it indicates criminality. *Alexander*, 490 P.2d at 913. In these consolidated cases, the parties have concentrated on the significance of imprisonment as a penalty and have not considered the extent to which a substantial fine or the loss of a valuable

license would require a finding of *mens rea*. We therefore do not resolve that issue. We note that the supreme court does not seem to consider either the size of a fine or the risk of loss of a license as significant in themselves but rather views them as indicative of the community's attitude toward the conduct in question. *Wood v. Superior Court*, 690 P.2d 1225, 1233 (Alaska 1984). In the supreme court's view, if an adverse judgment followed by the penalties under consideration serves to brand the defendant with the same stigma as a misdemeanor conviction, the penalties are criminal penalties and the defendant is entitled to the assistance of counsel and the right to a jury trial. *See Alaska Public Defender Agency v. Superior Court*, 584 P.2d 1106, 1110 (Alaska 1978) (discussing fines) and *Alaska Board of Fish and Game v. Loesche*, 537 P.2d 1122, 1125 (Alaska 1975) (discussing loss of a valuable license). The issue is discussed further in *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 537–38 (Alaska 1980) (Dimond, J., concurring, joined by Rabinowitz, C.J.) (approving $5,000 fine as a civil penalty but noting the importance of the collateral consequences of an adverse judgment in determining criminality). *See also Brown v. Multnomah County District Court*, 280 Or. 95, 570 P.2d 52 (1977) (first offense of driving while intoxicated is a crime rather than an infraction despite the absence of imprisonment as a sanction because of collateral consequences).

**5.** We use the term "crime" as defined in AS 11.81.900(b)(9): "'crime' means an offense for which a sentence of imprisonment is authorized; a crime is either a felony or a misdemeanor."

based upon a finding of negligence or some higher level of *mens rea* without further legislative authorization. The language of 5 AAC 39.002 providing for strict liability does not specifically address the question of penalties. In our view, the regulation is valid to the extent that it governs violations but invalid to the extent that it governs crimes.

The question then becomes whether we invalidate the regulatory scheme for adopting strict liability but failing to specify the penalties to which it attaches or whether we should enforce the regulatory scheme to the extent that it is within the legislative authorization. We conclude that the latter result is preferable. We reach this conclusion by analogy to the legislature's treatment of severability in AS 01.10.030 which provides:

> Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be effected [sic] thereby."

 Strictly speaking, this statute does not apply to the interpretation of regulations. Nevertheless, the effect of invalidating a statute on constitutional grounds is sufficiently similar to the effect of invalidating a regulation for lack of statutory authorization that similar rules should apply. In *Lynden Transport, Inc. v. State*, 532 P.2d 700, 711–15 (Alaska 1975), the supreme court interpreted this statute and determined that ultimately severance was a question of legislative intent. In attempting to fathom legislative intent the court adopted the following test:

The test for determining the severability of a statute is twofold. A provision will not be deemed severable "unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall." [*Quoting Dorchy v. Kansas*, 264 U.S. 286, 290, 44 S.Ct. at 323, 324, 68 L.Ed.2d 686, 690 (1924).]

532 P.2d at 713.

 We conclude that the Board of Fisheries' intent was to make fishing regulations strict-liability offenses to the extent possible under law. Therefore we are confident that the Board would wish to preserve strict liability as a predicate for a noncriminal fine without surrendering the power to have those who negligently violate the regulations subject to imprisonment. Finally, we conclude that this intent can be given legal effect by viewing the Board's action in adopting 5 AAC 39.002 as in effect serving to separate each affected regulation into two offenses: a crime requiring a negligence *mens rea* punishable by possible imprisonment and a violation satisfied by strict liability but only punishable by a noncriminal fine or possible forfeiture.[6] In order to insure that all those accused of fishing regulation violations receive due process the prosecutor should give notice in advance of trial of whether he or she will be seeking possible imprisonment as a penalty. *Cf. Johansen v. State*, 491 P.2d 759, 766 n. 27 (Alaska 1971) (in order to insure that proper procedures will be followed in contempt proceedings, prosecutor must announce at the beginning of a proceeding whether he or she is seeking a criminal contempt conviction with possible imprisonment as a sanction or only a finding of civil contempt). If the prosecutor seeks imprisonment as a penalty for the

---

**6.** The parties have not directly addressed the question whether Alaska law permits forfeitures other than a forfeiture of contraband for a violation of strict liability offenses. *See State v. Rice*, 626 P.2d 104, 110–115 (Alaska 1981). *Cf. Resek v. State*, —— P.2d ——, Op. No. 2972 (Alaska, August 30, 1985) (discussing forfeitures as civil or criminal penalties). Beran is the only person before this court in this proceeding who was convicted of an offense and he was not sentenced to such a forfeiture. It is therefore not necessary for us to decide this question at this time. *See also* n. 4 (regarding fines).

breach of a fishing regulation, the jury must be instructed on the applicable *mens rea.* In the absence of such notification by the prosecutor on the record the court should treat the matter as a prosecution of a violation and on conviction only impose appropriate sanctions. The judgment of conviction should also indicate whether the conviction was for a crime or only for a violation.

Before setting out the reasons which lead us to this result a preliminary comment is in order. Since we find a legislative intent not to permit criminal offenses without *mens rea* in the absence of an express authorization to be determinative in this case, we need not address the legislature's authority to delegate to an agency the power to establish the elements of an offense including the *mens rea. See United States v. Grimaud,* 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); W. LaFave & A. Scott, *Criminal Law* § 14 at 101–105 (1972); 1 Davis, *Administrative Law* § 3.11 (2d ed. 1978); Charney, *The Need for Constitutional Protections for Defendants in Civil Penalty Cases,* 59 Cornell L.Rev. 478 (1974); Abrahams and Snowden, *Separation of Powers and Administrative Crimes: A Study of Irreconcilables,* 1976 So.Ill.L.J. 1; Schwenk, *The Administrative Crime, Its Creation and Punishment by Administrative Agencies,* 42 Mich.L.Rev. 51 (1943). LaFave and Scott state the rules applicable to this question as follows:

A legislature may delegate to an administrative agency the power to make rules, the violation of which is punishable as a crime by virtue of a penalty set by statute. But the legislature may not delegate the power to determine which administrative regulation shall carry criminal penalties, nor may it delegate the power of adjudication when criminal penalties are to be imposed. The legislature may make it a crime to violate an administrative order.

W. LaFave and A. Scott, *Criminal Law* § 14 at 101 (1972).

*A fortiori* we do not decide, in this case, whether the legislature may constitutionally give express authorization to an administrative agency to establish strict liability offenses which under applicable statutes are punishable by sentences of imprisonment. No statute provides such express authorization. Our inquiry is limited to deciding whether the legislature in fact intended to provide implicit authorization to agencies to adopt strict liability regulations which would be punishable by imprisonment.

We begin our analysis of the Board of Fisheries' statutory authorization to enact regulations by considering four statutes: AS 11.81.220, AS 16.05.251, AS 44.62.020 and AS 44.62.030.[7]

Alaska Statute 11.81.220 provides:

7. Also significant are AS 16.05.710 which provides:

*License forfeiture.* Upon a first or second conviction of a person for a violation of AS 11.16.05.440–16.05.720 or a federal or state law or regulation for the protection of the commercial fish of the state, the court may, in addition to the penalty imposed by law, forfeit the commercial fishing license of the person for a period of one year. Upon a third conviction, the court may, in addition to the penalty imposed by law, forfeit the commercial fishing license for a period not the exceed three years.

and AS 16.05.720 which provides:

*Penalties.* (a) Except as modified by (c) of this section, a person who violates AS 16.05.-480–16.05.690 or the regulations of the department pertaining to commercial fisheries is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $5,000, or by imprisonment for not more than one year, or by both.

(b) The court shall transmit the proceeds from all fines to the proper state officer for deposit to the general fund of the state.

(c) A person who is convicted of commercial fishing in closed waters, commercial fishing during a closed period or season, or commercial fishing with unlawful gear including but not limited to nets, pots, tackle or other devices designed or employed to take fish commercially, is guilty of a misdemeanor and in addition to the penalty imposed under (a) of this section is punishable by a fine of not less than the gross value to the fisherman of the fish found on the vessel or at the fishing site at the time of the violation. Upon a third conviction of a person for a violation of this subsection, in addition to the forfeiture provision in AS 16.05.710, the fine shall be not less

No conduct constitutes an offense unless it is made an offense

(1) by this title;

(2) by a statute outside this title; or

(3) by a regulation authorized by and lawfully adopted under a statute.

AS 16.05.251(a)(4):

*Regulations of the Board of Fisheries.* (a) The Board of Fisheries may adopt regulations it considers advisable in accordance with the Administrative Procedure Act (AS 44.62) for

. . . .

(4) establishing the means and methods employed in the pursuit, capture and transport of fish;

Alaska Statute 44.62.020 provides:

*Authority to adopt, administer, or enforce regulations.* Except for the authority conferred upon the lieutenant governor …, AS 44.62.010–44.62.320 do not confer authority upon or augment the authority of a state agency to adopt, administer, or enforce a regulation. To be effective, each regulation adopted must be within the scope of authority transfered and in accordance with standards prescribed by other provisions of law.

Alaska Statute 44.62.030 provides:

*Consistency between regulation and statute.* If, by express or implied terms of a statute, a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no reg-

ulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purposes of the statute.[8]

 In summary, in determining whether a regulation is authorized by statute we look to four things. First, the scope of authority conferred by the authorizing statute. Second, the extent to which the regulation is in accordance with "standards prescribed by other provisions of law." AS 44.62.020. Third, the extent to which the regulation is consistent with the authorizing statute, and fourth, the extent to which the regulation is reasonably necessary to carry out the purpose of the authorizing statute. Applying these standards, we conclude that in the absence of express statutory authorization, an administrative regulation is not a strict liability offense if the violation is punishable by imprisonment because in the absence of express legislative authorization strict liability offenses are not in accordance with "standards prescribed by other provisions of law." We further conclude that to the extent a regulation calls for a possible penalty of criminal imprisonment, strict liability is not reasonably necessary to carry out the purpose of the statutes authorizing the Board of Fisheries to adopt it. Thus imposing a prison sentence on someone convicted of violating an administrative regulation on the basis of strict liability fails two of the four tests for evaluating the validity of an

---

than three times the gross value to the fisherman of the fish found on the vessel or at the fishing site, or, if no fish are found on the vessel or at the fishing site, a fine of not more than $10,000.

While these statutes purport to provide penalties for any violation of an administrative regulation they do not expressly address the question of *mens rea* or indicate whether differing penalties require a differing level of *mens rea.* In order to decide that question we must consider the interplay of these statutes with other statutes discussed in the text of this decision. We therefore do not consider the general reference to anyone violating a regulation as being guilty of a misdemeanor to preclude us from holding that someone who negligently, recklessly or intentionally violates a regulation is guilty

of a misdemeanor but one who violates the regulation without fault is at most guilty of a violation. Reading all statutes *in pari materia,* we conclude that the legislature intended to permit th Board of Fisheries to adopt regulations the breach of which would be subject to civil or criminal penalties depending on the presence or absence of *mens rea.* In addition, the legislature has established appropriate penalties for the conduct proscribed.

8. AS 44.62.020–30 are part of the Alaska Administrative Procedure Act. This act was derived from former California law. *Pan American Petroleum Co. v. Shell Oil Co.,* 455 P.2d 12, 21 n. 36 (Alaska 1969). We have not been cited to any cases or commentary from California helpful to an interpretation of these statutes.

administrative regulation. We will deal with these issues in turn.

ABSENT EXPRESS STATUTORY AUTHORIZATION, IS AN ADMINISTRATIVE REGULATION BASED ON STRICT LIABILITY AND PUNISHABLE BY IMPRISONMENT "IN ACCORDANCE WITH OTHER PROVISIONS OF LAW"?

AS 01.10.010 provides in relevant part:

*Applicability of common law.* So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.

The common law consists of judicial pronouncements in situations not dealing with a constitutional question or statutory interpretation unless and until modified by the Alaska legislature. *See, e.g., Surina v. Buckalew,* 629 P.2d 969, 973 (Alaska 1981). Consequently, in determining what standards are prescribed "by other provisions of law" (AS 44.62.020) to which administrative regulations must conform we must look (1) to the state and federal constitutions, (2) to statutes enacted by the legislature and (3) to appellate court decisions declaring the common law to the extent that they are not inconsistent with the constitution or a legislative enactment. Examination of these sources leads us to conclude that, in the absence of express statutory authorization, administrative agencies do not have the power to establish strict liability crimes but do have the power to establish strict liability violations. Looking first to the constitution, the courts of this state have consistently recognized that strict liability offenses punishable by possible imprisonment are of questionable constitutionality. *See, e.g., State v. Rice,* 626 P.2d 104 (Alaska 1981); *Hentzner v. State,* 613 P.2d 821 (Alaska 1980); *Kimoktoak v. State,* 584 P.2d 25 (Alaska 1978); *Speidel v. State,* 460 P.2d 77 (Alaska 1969). *See also Reynolds v. State,* 655 P.2d 1313 (Alaska App.1982).[9] In *Kimoktoak* the court recognized the importance of the constitution in statutory interpretation when it said,

Finally, we note that in *Campbell,* [*State v. Campbell,* 536 P.2d 105 (Alaska 1975)] we recognized the well-established rule of statutory construction that a court should if possible construe statutes so as to avoid the danger of unconstitutionality. We have alluded to this rule on many other occasions. It recognizes that the legislature, like the courts, is pledged to support the state and federal constitutions and that the courts, therefore, should presume that the legislature sought to act within constitutional limits. [Citation omitted.]

584 P.2d at 31.

Recognizing that strict liability crimes were constitutionally suspect, the *Kimoktoak* court construed an ambiguous statute to require *mens rea.* Closely related to the constitutional concerns expressed above is

---

9. We recognize that the Alaska Supreme Court has been more critical of strict liability than the courts of other jurisdictions, *see, e.g., State v. Buttrey,* 293 Or. 575, 651 P.2d 1075 (1982) (upholding constitutionality of statute which made driving without a license under some circumstances a class C felony absent any showing of *mens rea.* Buttrey received a five-year suspended imposition of sentence on condition, *inter alia,* that she serve one year's imprisonment.)

We would point out in this regard that the line between strict liability and negligence is a narrow one. We apply an objective standard in determining negligence. Many of the United States Supreme Court cases which appear to authorize strict-liability offenses may be establishing a negligence standard with the duty defined to require a very high degree of care. *See, e.g., United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (where defendant engages in a heavily regulated industry he must be presumed to be aware of the terms and regulations); *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (no specific intent required for receiving and possessing a firearm not registered to him). The scope of the duty which the law imposes on those engaged in commercial fishing is not an issue presented in this appeal. We assume that upon timely request the trial court will instruct the jury regarding the specific duties which the law imposes upon the defendant in a given case.

the position of the common law explicated in case law. To a limited extent the common law objections and constitutional objections to strict liability crimes overlap. A number of common law authorities which recognize the constitutionality of strict liability crimes, nevertheless criticize adoption of strict liability crimes on common law grounds. *See, e.g.,* W. LaFave & A. Scott, *Criminal Law* § 31 at 218–223 (1972); Hall, *General Principles of Criminal Law,* 325–359 (2d ed. 1960); Mueller, *Mens Rea and the Law Without It,* 58 W.Va.L. Rev. 34 (1955). *But see* Wasserstrom, *Strict Liability in the Criminal Law,* 12 Stan.L.Rev. 731 (1960). LaFave & Scott summarize the arguments against strict liability as follows:

Aside from the question of constitutionality, there is the question of wisdom in providing for strict-liability crimes. The reasons for having statutes imposing criminal liability without fault are those of expediency: in some areas of conduct it is difficult to obtain convictions if the prosecution must prove fault; so enforcement requires strict liability. If the conduct to be stamped out is harmful enough, or if the number of prosecutions to be expected is great enough, the legislature may thus wish to make the absence of fault no defense, in order to relieve the prosecution of the task of going into the matter.

For the most part, the commentators have been critical of strict-liability crimes. "The consensus can be summarily stated: to punish conduct without reference to the actor's state of mind is both inefficacious and unjust. It is inefficacious because conduct unaccompanied by an awareness of the factors making it criminal does not mark the actor as one who needs to be subjected to punishment in order to deter him or others from behaving similarly in the future, nor does it single him out as a socially dangerous individual who needs to be incapacitated or reformed. It is unjust because the actor is subjected to the stigma of a criminal conviction without being morally blameworthy. Consequently, on either a preventive or retributive theory of criminal punishment, the criminal sanction is inappropriate in the absence of *mens rea.*" [Footnote omitted.]

W. LaFave & A. Scott, *Criminal Law* § 31 at 222.

Finally, and most importantly, the legislature's treatment of strict liability in the revised criminal code strongly militates in favor of construing statutes authorizing agencies to enact regulations defining crimes to require express statutory authorization before permitting an administrative agency to attach the potential punishment of imprisonment to conviction of a strict liability offense. AS 11.81.600(b) provides:

A person is not guilty of an offense unless he acts with a culpable mental state, except that no culpable mental state must be proved

(1) if the description of the offense does not specify a culpable mental state and the offense is

(A) a violation; or

(B) designated as one of "strict liability"; or

(2) if a legislative intent to dispense with the culpable mental state requirement is present.

The legislature has exercised great care to insure that strict liability will not be inferred in interpreting statutes. It seems reasonable to rely upon that decision to preclude an inference of legislative authorization for administrative agencies to establish a strict liability offense except to the extent that that offense would be a "violation" and imprisonment unavailable as a sanction.[10]

10. The Revised Criminal Code is based upon the Model Penal Code (Approved Draft 1962), *Neitzel v. State,* 655 P.2d 325, 327 (Alaska App.1982). Consequently, recognition of what the legislature altered, modified or eliminated from the Model Penal Code is useful in determining legislative intent. *Id.* The Model Penal Code makes its culpability requirements applicable to offenses defined by statutes outside the Code. MPC § 2.05. The revised code does not. AS

In summary, whether we look to the constitution, the common law or state statutes discussing the circumstances under which strict liability may be inferred, we are left with the conclusion that in the absence of express statutory authorization a regulation imposing strict liability but providing for punishment by possible imprisonment is not "in accordance with standards prescribed by other provisions of law." AS 44.62.020.

## IS STRICT LIABILITY NECESSARY TO CARRY OUT THE PURPOSE OF THE STATUTES AUTHORIZING THE FISHERIES BOARD TO ADOPT REGULATIONS AND MAKE THEIR VIOLATIONS CRIMINAL?

In *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971) the Alaska Supreme Court concluded:

> Thus, where an administrative regulation has been adopted in accordance with the procedures set forth in the Administrative Procedure Act, and it appears that the legislature has intended to commit to the agency discretion as to the particular matter that forms the subject of the regulation, we will review the regulation in the following manner: First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. This aspect of review insures that the agency has not exceeded the power delegated by the legislature. Second, we will determine whether the regulation is reasonable and not arbitrary. This latter inquiry is proper in the review of any legislative enactment.

In *State v. Rice*, 626 P.2d 104, 110 (Alaska 1981) the court indicated that a hunting regulation establishing strict liability without regard to knowledge of legality would bear no reasonable relation to a legitimate regulatory purpose. If this is so, then strict liability would not be necessary to carry out the statutory authorization found in AS 16.05.251(a)(4). The state argues vigorously that this court should not question the wisdom of the policy determination of the Joint Boards of Fisheries and Game, that the strict liability standard is necessary for effective enforcement of fish & game regulations; citing *Kelly v. Zamarello*, and *Earth Resources Co. v. State Department of Revenue*, 665 P.2d 960 (Alaska 1983). Essentially the state argues that the Joint Board was concerned that a due care defense, *i.e.*, a requirement of a negligence *mens rea* or a reasonable mistake of fact defense (the two are virtually interchangeable) could so easily be feigned that fishermen would violate the regulations with impunity if the state were required to prove negligence. We are satisfied that the state has misunderstood the issue. Under our interpretation of the statute and implementing regulations, a fisherman who violates a regulation without fault is not free from any sanction. He is subject to a reasonable fine and at the very least the forfeiture of any fish illegally taken. Commercial fishing is a business; forfeiture of the fish illegally taken and in addition a fine should take the profit out of violations and deter most violators. It is only where the state seeks possible imprisonment as a penalty that a negligence

---

11.81.640. The reasons for this change do not appear in the Commentary to the Revised Criminal Code set out in the Senate Journal. *See,* Supp. No. 47 in 2 Senate Journal (1978) (regarding "Construction of Statutes with respect to Culpability" and "Effect of Ignorance or Mistake on Liability"), following p. 1413. The issue is not discussed in the tentative draft of the revised code. *See* Alaska Criminal Code Revision Part 2, at 7–24 (Tent.Draft 1977); Part 5 at 6–10 (Tent.Draft 1978). A number of reasons might explain the legislature's action without establishing legislative intent to implicitly authorize agencies to establish strict liability offenses punishable by imprisonment. We therefore recognize the problem posed by AS 11.81.640 but adhere to the views expressed in the text of this opinion. *Cf. Adams v. Waddell*, 543 P.2d 215, 217–18 (Alaska 1975) (while exercise of option to purchase real estate is expressly excluded from coverage under Article II of the UCC, court construing former may consider principles found in latter as relevant recent legislative judgment) *Rego v. Decker*, 482 P.2d 834, 838 (Alaska 1971) (*accord*).

*mens rea* must be proved. There is nothing in the record presented to the Board of Fisheries or the trial courts in these cases to support a finding that a penalty of imprisonment is necessary in the great majority of cases to effectively enforce the regulations. In fact, the evidence is to the contrary. *See Statistical Analysis of Major Fish & Game Sentencing Outcomes in Alaska,* Nicholas Maroules and Francis N. Troxell, Alaska Judicial Council (April 1983). Very few commercial fish offenders are actually ordered to serve time in jail. According to the state's brief on appeal

> Fish & Wildlife Protection records indicate that 16,182 persons were charged with fish and game offenses between January 1, 1983, and October 12, 1984. These records together with the Judicial Council study further show that only 95 commercial fish offenders were ordered to serve time in jail between 1973 and October 12, 1984—.06 of 1% of all Fish & Game offenders.

The state elaborates on this argument:

> Fish & Wildlife records do not show any person served time in jail in 1980 and that eleven persons served time in jail in 1981. Council records show that twenty-two persons served time in jail in 1980 and 1981. In order to arrive at the total of 95, it was assumed that eleven persons were ordered to serve jail sentences in 1980.

While jail sentences are rare, there is at least the potential that a person convicted of multiple fishing violations could be sentenced to a substantial period of imprisonment. *See, e.g., State v. Graybill,* 695 P.2d 725 (Alaska 1985) (affirming consecutive sentences totaling seven years with five and one-half years suspended imposed on recidivist violator of hunting regulations).

11. We do not suggest that prior convictions of strict liability fishing offenses are automatically admissible to disprove a reasonable mistake of fact defense. The proper interpretation and application of A.R.E. 404(b) and 403 are matters committed to the sound discretion of the trial court.

12. *See* n. 4 *supra.*

Under our interpretation of the Board's authority, the state is free to seek conviction and a fine under a theory of strict liability for violations exactly as they have in the past. It is only in the rarer case where the state desires imposition of a criminal penalty that it must show a negligence *mens rea.* Since it appears that the state in fact only asks for a penalty of imprisonment for substantial recidivists it is unlikely that it will have difficulty proving the requisite *mens rea. See, e.g.,* Alaska Evidence Rule 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[11]

Beran, Carlos, Most, and Park were convicted of fishing in closed waters. 5 AAC 24.310(c); 5 AAC 27.810(d). The state did not prove negligence. Beran received a sentence of a $4,000 fine with $1,500 suspended and 30 days' imprisonment with 30 days suspended. Carlos received a sentence of $3,000 with $2,250 suspended and 15 days' imprisonment with 15 days suspended. Most received the same sentence. Park received a sentence of a $1,500 fine with $1,000 suspended, and 15 days' imprisonment with 15 days suspended.

Under our view of the applicable statute and regulations, fines in these amounts may be a permissible penalty for commercial violations.[12] The suspended sentence is not. On remand, the state should determine whether it wishes to seek a criminal penalty from each of the appellants in which case reprosecution with appropriate jury instructions would be required.[13] Al-

13. We hold that every fish and game regulation comprises both a crime requiring *mens rea* and a violation which differs from the crime only in that a conviction does not require a finding of *mens rea.* The parties have not briefed and we do not decide whether a violation is therefore a lesser-included offense of every fish and game violation prosecuted as a crime.

ternatively, the state may request that the suspended jail term be stricken from the judgment and the conviction be treated as one for a violation. *See Nix v. State*, 624 P.2d 823 (Alaska App.1981) (where defendant was necessarily found guilty of a lesser-included offense and the only errors requiring reversal relate to greater offense trial court may on remand enter conviction on lesser offense as an alternative to holding new trial). Should the state request an amended judgment and the appellant objects, the trial court should hear argument from the parties on the appropriateness of the fine suspended as a civil penalty. *See State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 537–38 (Alaska 1980) (Dimond J., concurring).

The petitioners have not yet been tried. On remand the state shall elect in each case whether to seek a penalty of imprisonment, in which case a *mens rea* of negligence must be proved, or proceed on a theory of strict liability in which case the penalties to be imposed on conviction shall not exceed an appropriate fine.[14]

These cases are REMANDED for further proceedings consistent with this opinion.

BRYNER, C.J., and COATS, J. concur.

BRYNER, Chief Judge, concurring.

I concur.

While I do not disagree with the majority's decision, I would prefer to address squarely the constitutional issue raised in these cases: whether the Alaska Constitution permits criminal sanctions to be imposed without proof of any culpable mental state. I would resolve the issue by holding that the due process clause of the Alaska Constitution, art. I, § 7, precludes imposition of criminal sanctions for an offense in the absence of proof establishing a minimally adequate level of *mens rea*. My position, in effect, reflects the views expressed in *Hentzner v. State*, 613 P.2d 821,

824–29 (Alaska 1980), and is fully in keeping with other decisions of the Alaska Supreme Court and the Court of Appeals. *See, e.g., State v. Rice*, 626 P.2d 104, 107–09 (Alaska 1981); *Kimoktoak v. State*, 584 P.2d 25, 28–31 (Alaska 1978); *Speidel v. State*, 460 P.2d 77, 78–82 (Alaska 1969); *Reynolds v. State*, 655 P.2d 1313 (Alaska App.1982); *Wheeler v. State*, 659 P.2d 1241, 1249–1254 (Alaska App.1983).

The level of *mens rea* that satisfies due process will vary, depending on the nature of the specific offense charged. In *Reynolds v. State*, 655 P.2d at 1315, a commercial fishing case, we adopted a *mens rea* requirement equivalent to a civil negligence standard, indicating that the defendant was entitled to rely on reasonable mistake of fact as a defense to the prosecution. In other contexts, it is manifest that a civil negligence standard would not suffice to meet the requirements of due process. *See, e.g., Speidel v. State*, 460 P.2d at 80 (reversing felony conviction for theft where a statute would have permitted criminal liability to be based on a finding of negligence). *Cf.* AS 11.81.610(b) (where no mental state is expressly provided for under the revised criminal code, the applicable mental states are "knowingly" with respect to conduct and "recklessly" with respect to a circumstance or a result).

Commercial fishing, however, is a heavily regulated industry which involves one of Alaska's most vital natural resources; I believe the state has a legitimate right to hold participants in the industry to a higher standard of care than might otherwise be appropriate as a predicate for criminal responsibility. Accordingly, I would follow our decision in *Reynolds* and hold that in commercial fishing cases the state may meet its burden of proving *mens rea* by establishing that the conduct of the accused was negligent.

Since, in the present cases, the superior court upheld the challenged regulations as constitutional, despite their express provi-

---

**14.** Nothing in this opinion would preclude a trial court from imposing a forfeiture as a penalty for conviction of a violation if after argu-ment it is convinced such a penalty is authorized by the statutes and the constitution.

sion for strict liability, I concur in the majority's decision to reverse the superior court's decisions.

COATS, Judge, concurring.

There is serious question whether a defendant who violates the law without any negligence on his part can be punished by criminal sanctions under art. I, § 7 of the Alaska Constitution. However, since the legislature has not clearly authorized the imposition of criminal sanctions where the defendant has violated the law without a culpable mental state, I join Judge Singleton in holding that criminal sanctions have not been authorized. I therefore find it unnecessary to reach the constitutional issue reached by Chief Judge Bryner. However, I think it is only fair to point out that if the legislature clearly authorizes the imposition of criminal sanctions for defendants who commit violations without having a culpable mental state, there is a substantial chance that the legislation would be in violation of art. I, § 7 of the Alaska Constitution.