**John M. WAISTE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3401.**

Court of Appeals of Alaska.

April 5, 1991.

---

Richard D. Ellmers, King Salmon, for appellant.

Louis J. Menendez, Dist. Atty., Dillingham, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., COATS, J., and ANDREWS, District Judge.*

ANDREWS, District Judge.

John M. Waiste appeals from his conviction after a trial by jury of the misdemeanor offense of operating a drift gill net in a manner not conforming to its basic design. 5 AAC 39.105(a)(3). We reverse.

On August 9, 1989, Waiste was arrested while commercially fishing for salmon using drift net gear on the Egegik River. Alaska State Trooper Robert Mumford and Fish and Game Technician Tory Oleck were on the river in the Fish and Wildlife patrol vessel, *Public Safety No. 1,* when they observed Waiste's boat, the *F/V Phoenix,* approximately two- to three-hundred yards away. They saw a drift gill net being deployed off the stern of the *Phoenix.*

The *Phoenix* was drifting westward with the tide. The drift net gear was still being deployed when the *Phoenix* ran aground on a sandbar on the west bank of the river. Mumford boarded the *Phoenix* and served Waiste with a summons and complaint charging that he "[d]id unlawfully and negligently commercial fish a drift gill net in a manner not conforming to its basic design. To wit: did fix the net to an exposed sandbar by allowing his fishing vessel to go aground and go dry, thus ceasing the net from drifting." The complaint cited 5 AAC 39.105(a)(3) as the regulation that had been violated.

Waiste argues that the trial court erred in rejecting his proposed jury instruction setting forth the elements of the offense as including a *mens rea* of intent, and instead instructing the jury that the *mens rea* for the offense was negligence.

The regulation under which Waiste was convicted, 5 AAC 39.105, provides in part:

TYPES OF LEGAL GEAR: (a) All gear shall be operated in a manner conforming to its basic design.

. . . .

(d) Unless otherwise provided in this title, the following are legal types of gear:

. . . .

(2) a set gill net is a gill net that has been intentionally set, staked, anchored, or otherwise fixed;

(3) a drift gill net is a drifting gill net that has not been intentionally staked, anchored, or otherwise fixed. . . .

Waiste proposed a jury instruction setting forth this regulatory language, and another instruction listing the essential elements of the offense as:

(1) That the defendant on or about the date and time charged

(2) was commercial fishing

(3) with a drift gill net

(4) which had been intentionally set, staked, anchored or otherwise fixed.

The trial court rejected these instructions, ruling that the legislature had recently established negligence as the *mens rea*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

applicable to all commercial fishing misdemeanors. The court instructed the jury that the essential elements of the offense were:

(1) that the defendant on or about the date and time charged

(2) was commercial fishing

(3) with a drift gill net

(4) and was negligently not drifting.

Waiste argues that 5 AAC 39.105(d)(3) establishes a *mens rea* of intent for the offense of using a drift gill net while not drifting. He asserts that the trial court erred in ruling that the legislature had established negligence as the *mens rea* for all fish and game misdemeanors, regardless of the language of individual regulations.

Prior to 1983, the Alaska Statutes and the Board of Fisheries regulations were silent as to the culpable mental state required for conviction under many fishing regulations. *See* former AS 16.05.720 (repealed by ch. 46, § 5, SLA 1988); *Reynolds v. State,* 655 P.2d 1313, 1314 (Alaska App. 1982). In 1983, the Board of Fisheries enacted 5 AAC 39.002, which provides:

*Liability for Violations.* Unless otherwise provided in 5 AAC 01–5 AAC 41 or in AS 16, a person who violates a provision of 5 AAC 01–5 AAC 41 is strictly liable for the offense regardless of his intent.

We considered the effect of this regulation in *Beran v. State,* 705 P.2d 1280 (Alaska App.1985). The appellants in *Beran* had been convicted of violating Fish and Game regulations on a strict liability theory. Each appellant received a suspended sentence of imprisonment and each was ordered to pay a fine. *Id.* at 1291. The appellants argued that 5 AAC 39.002 was both unconstitutional and outside the scope of the authority granted to the Board of Fisheries by the legislature. We held:

[F]irst, that the legislature has authorized the Board of Fisheries to make a breach of a regulation a "violation" and

a strict-liability offense which would be punishable by a noncriminal fine. Second, we are satisfied that the legislature has authorized the Board of Fisheries to constitute the breach of a regulation a crime which would be punishable by imprisonment, but only if a *mens rea* is required. Where a higher degree of *mens rea* is not specified in a regulation we will continue to infer a negligence requirement as a predicate to a sentence of imprisonment.

*Id.* at 1283–84 (footnotes omitted). We were able to give effect to the Board of Fisheries' intent to make fishing regulations strict liability offenses to the extent possible under law by interpreting 5 AAC 39.002 as "in effect serving to separate each affected regulation into two offenses: a crime requiring a negligence *mens rea* punishable by possible imprisonment and a violation satisfied by strict liability but only punishable by a noncriminal fine or possible forfeiture." *Id.* at 1285 (footnote omitted).

Two years later, in *Constantine v. State,* 739 P.2d 188 (Alaska App.1987), we were presented with the question of exactly what penalties the legislature had authorized for noncriminal violations of Board of Fisheries regulations. We concluded that the legislature had not addressed the question. In the absence of statutory authority for the imposition of more substantial penalties, we held that the courts were authorized in cases of noncriminal fish and game violations only to order the forfeiture of any fish or game obtained in violation of the regulation, and to impose a maximum fine of $300.[1] *Id.* at 190.

In 1988, the legislature enacted AS 16.05.722, which provides in part:

*Strict Liability Commercial Fishing Penalties.*

(a) A person who without any culpable mental state violates AS 16.05.440—16.-05.690, or a regulation of the Board of Fisheries or the department governing

---

1. The authorization for a fine of up to $300 was found in AS 12.55.035(b)(5), which establishes $300 as the maximum fine for a violation in all

criminal actions, except where specific provision is otherwise made. *See* AS 12.85.010.

commercial fishing, is guilty of a violation and upon conviction is punishable by a fine of not more than

(1) $3,000 for a first conviction; and
(2) $6,000 for a second or subsequent conviction.

In 1988 the legislature also enacted AS 16.05.723, which provides in part:

### Misdemeanor Commercial Fishing Penalties.

(a) A person who negligently violates AS 16.05.440—16.05.690, or a regulation of the Board of Fisheries or the department governing commercial fishing, is guilty of a misdemeanor and in addition to punishment under other provisions in this title ... is punishable upon conviction by a fine of not more than $15,000 or by imprisonment for not more than one year, or by both.

Waiste argues that by establishing substantial penalties for noncriminal violations of commercial fishing regulations, the legislature was simply filling the statutory void we noted in *Constantine*. He argues that these statutes were not intended to change the elements of any commercial fishing offense, or to disturb our holding in *Beran* that negligence was the applicable *mens rea* for commercial fishing misdemeanors only "[w]here a higher degree of *mens rea* is not specified in a regulation...." 705 P.2d at 1284.

■ Waiste contends that by the use of the word "intentionally" in 5 AAC 39.-105(d)(3), the Board of Fisheries established a *mens rea* of intent for the offense of using a drift gill net while not drifting. He argues that intent is still an essential element of the offense despite the enactment of AS 16.05.723. We agree.

Although AS 16.05.723 is broadly worded, we do not interpret it as superseding all Board of Fisheries regulations that specify a *mens rea* other than negligence. Given the lack of any clear expression of legislative intent, such an interpretation would be unwarranted.

■ The trial court's ruling that AS 16.-05.723 effectively repealed the *mens rea*

provision in 5 AAC 39.105(d)(3), contravenes the widely accepted presumption against repeal of prior laws by implication. *See* 1A J. Sutherland, Statutory Construction § 23.10 at 346 (4th ed. 1985). In *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981), the Supreme Court held, "repeals by implication are not favored. The intention of the legislature to repeal must be 'clear and manifest'." *Id.* at 266–67, 101 S.Ct. at 1678 (citations omitted). More specifically,

'[t]he enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by general law.... [W]here the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a qualification or exception to the general law.'

*Matanuska–Susitna Borough v. Lum*, 538 P.2d 994, 1000 n. 14 (Alaska 1975) (quoting J. Sutherland, Statutory Construction § 23.15 at 245–46 (4th ed. 1972)).

■ Another established principle of statutory construction is that where one statute deals with a subject in general terms and another deals with a part of the same subject in more detail, the two should be harmonized if possible, but if there is any conflict, the more specific statute will prevail. *Matter of Hutchinson Estate*, 577 P.2d 1074, 1075 (Alaska 1978); *Stone v. State*, 690 P.2d 22, 24 (Alaska App.1984); 2A Sutherland, Statutory Construction § 51.05 at 499. We must also adhere to the general rule that ambiguous penal statutes are to be strictly construed in favor of the accused. *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985), *aff'd.* 723 P.2d 85 (Alaska 1986); 3 J. Sutherland, Statutory Construction § 59.03 at 11 (4th ed. 1985). We decline to interpret AS 16.05.-723 as repealing all specific provisions in the Board of Fisheries regulations establishing a *mens rea* other than negligence

for a particular offense.[2]

The conviction is REVERSED.

COATS, J., concurs.

COATS, Judge, concurring.

Waiste was convicted of operating a drift gill net in a manner not conforming to its basic design. The regulations in question provide:

5AAC 39.105 *Types of Legal Gear:* (a) All gear shall be operated in a manner conforming to its basic design.

.    .    .    .    .

(d) Unless otherwise provided in this title, the following are legal types of gear:

.    .    .    .    .

(2) a set gill net is a gill net that has been intentionally set, staked, anchored, or otherwise fixed;

(3) a drift gill net is a drifting gill net that has not been intentionally staked, anchored, or otherwise fixed. . . .

The question before the court is whether the state had to prove that Waiste's drift gill nets had been "intentionally set, staked, anchored, or otherwise fixed" in order to show that he violated the regulation. The state argues that under AS 16.-05.723, it had only to prove that Waiste negligently went aground. The state contends that by negligently going aground Waiste "allowed his drift nets to fish as set nets."

We have often cited the principle of statutory construction that requires us to strictly construe criminal statutes against the government. *Romero v. State,* 792 P.2d 679, 682 (Alaska App.1990). When this principle is applied to this case, it is clear that the state must show that Waiste intentionally anchored his drift net to convict him of the misdemeanor offense. The regulation which requires a fisherman to operate gear in a manner conforming to its basic design, must be construed narrowly in order to give a fisherman notice of what

constitutes a violation. The regulation does not specify that a fisherman who accidently goes aground while he is fishing with a drift net violates the regulation. The definitions of "set gill net" and "drift gill net" support precisely the opposite interpretation. A drift gill net is a drifting gill net "that has not been *intentionally* staked, anchored or otherwise fixed." A set gill net is a gill net "that has been *intentionally* staked, anchored or otherwise fixed." (Emphasis supplied.) In its brief, the state contends that Waiste's violation was that he "negligently ran his vessel aground and allowed his drift nets to fish as set nets." Under 5AAC 39.105, in order for the state to prove that Waiste used his drift gill net as a set gill net, the state had to prove that he *"intentionally* set, staked, anchored or otherwise fixed" his nets. This specific definition of the offense governs this case, not the general language of AS 16.05.723(a).

---

**2.** We do not mean to suggest that the conduct upon which this prosecution is based might not have made Waiste susceptible to conviction under some Board of Fisheries regulation other

than 5 AAC 39.105(d)(3) upon a showing only of the culpable mental state of negligence. This issue was not raised on appeal and we do not consider it.