## UNITED STATES v. DOO–NOCH–KEEN.

(First Division. Juneau. December 7, 1905.)

No. 78k.

1. CRIMINAL LAW—UNLAWFUL FISHING—MISDEMEANOR OR FELONY.

The defendant was indicted for unlawfully fishing. The penalty is a fine not exceeding $1,000, "or imprisonment at hard labor for a term not exceeding ninety days, or both. *Held*, the offense is a misdemeanor, and not a felony; reversing United States v. Alaska Packers' Ass'n and Babler, 1 Alaska, 217, on that point.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 29–31.]

2. STATUTES—CONSTRUCTION—CRIMINAL LAW.

Where the statute prescribing a penalty is susceptible of two constructions, that construction which is most favorable to the defendant must be given by the court.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 322, 323.]

3. COURTS—TERRITORIAL COURTS—UNITED STATES COURTS.

The District Court of Alaska acts in a dual capacity for the purpose, first, of administering the local laws under the Code, and, as such, is considered a territorial court; and, second, for the purpose of administering the laws of the United States which may be applicable to the district, and which are federal laws as contradistinguished from the local laws.

4. FISH—UNLAWFUL FISHING—INDICTMENT—INTENT.

Unlawful fishing is a statutory offense, and the indictment need not allege a felonious intent.

Demurrer to Indictment on Behalf of Doo-Noch-Keen.

J. J. Boyce, Dist. Atty., for the United States.
Shackleford & Lyons, for defendant.

GUNNISON, District Judge. The defendant, Doo-Noch-Keen, is indicted under section 180 of the Alaska Penal Code for unlawful fishing. The indictment alleges:

"That the said Doo-Noch-Keen * * * on the 27th day of June, 1905, in the district and division aforesaid, at or near Yakutat, and

within the jurisdiction of this court, did willfully, wrongfully, and unlawfully set and lay a gill net for the purpose of catching salmon within the waters of Black Sand Island channel or stream, the same being a stream of Alaska in which the tide waters ebb and flow, at a point in said stream midway between Cee-Tuck river and Anclean river, and said gill net being strtched across the tide waters of said stream or channel for a distance of more than one-third the width thereof, to wit, the entire width thereof from bank to bank, contrary to the form of the statute in such case made and provided. * * * "

The section under which this indictment is found is as follows:

"It shall be unlawful * * * to lay or set any drift-net, set-net, trap, pound-net, or seine for any purpose across the tide waters of any river or stream for a distance of more than one-third of the width of any river, stream or channel. * * * "

The Code further provides, in section 183, that:

"Any person violating the provisions of section * * * 180 of this act * * * shall upon conviction thereof be punished by a fine not exceeding one thousand dollars or imprisonment at hard labor for a term not exceeding ninety days, or both, such fine and imprisonment at the discretion of the court."

Defendant demurred to the complaint on the ground that the indictment does not substantially conform to the requirements of chapter 7 of the Code of Criminal Procedure of the District of Alaska; second, that the indictment does not state facts sufficient to constitute a crime.

On the argument of the demurrer to the indictment, defendants contend that, under a decision of the District Court in the case of United States v. Alaska Packers' Association and Babler, reported in 1 Alaska, 217, the crime charged against the defendant is a felony, and that therefore the indictment is defective in that it does not allege that the crime was committed with felonious intent. An examination of this opinion fails to disclose the reasons for the conclusion of the court that the crime is a felony; and, while I am prone to follow this deci-

2 A.R.—40

sion where I am able to find reason for it, I have, after much thought, arrived at the conclusion that under the peculiar wording of the Code of Alaska, and the dual capacity in which the district court for the District of Alaska acts, this offense is a misdemeanor. Defendants base their contention upon the phrase in the section, "imprisonment at hard labor." Were section 5542 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 3721] applicable to crimes committed in Alaska of the character of the crime herein charged, this might be true, but it has frequently been held that the District Court of Alaska acts in a dual capacity, for the purpose, first, of administering the local laws under the codes, and, as such, is considered as a territorial court; and, second, for the purpose of administering the laws of the United States which may be applicable to the district, and which are strictly federal laws as contradistinguished from the local laws. McAllister v. United States, 144 U. S. 174, 11 Sup. Ct. 949, 35 L. Ed. 693 ; Ex parte Cooper, 143 U. S. 472, 12 Sup. Ct. 453, 36 L. Ed. 232 ; The Coquitlam, 163 U. S. 346, 16 Sup. Ct. 1117, 41 L. Ed. 184 ; United States v. Seveloff, 2 Sawy. 211, Fed. Cas. No. 16,252 ; Allen v. Meyers, 1 Alaska, 114. As such it acts as a United States court. The Code of Criminal Procedure (section 2) provides that: "The crimes and offenses defined in this Code committed within the District of Alaska shall be punished as herein provided." This, it appears to me, makes the crimes set forth in the Code purely local in their character, and in no sense federal laws. In the case In re Dana (D. C.) 68 Fed. 899, the United States District Court in discussing the question relative to the District of Columbia, which, so far as legislation and the courts are concerned, stands in a like position with the District of Alaska, says:

"In administering the local law of the District of Columbia, the national government there acts as the state governments act within their several limits in administering the ordinary rights of person and property. This is an exceptional and wholly different field of

action from what is embraced in ordinary federal legislation, and it is evidently wholly foreign to the scope of the judiciary act. Offenses against the local law of the District of Columbia are in a sense offenses against the United States, because the United States is the local governing authority; but the judiciary act was not dealing with or contemplating this exceptional and local relation. The District of Columbia had then no existence. The scope and aim of the judiciary act were manifestly purely federal and national. It created the federal courts authorized by the Constitution for the country at large; it defined their jurisdiction, civil and criminal; and it established the districts in which each might act. * * * At that time a territorial government and territorial courts had been organized under the ordinance of 1787 in the Northwest Territory, but no one would contend that mere local offenses committed in that territory, and not embraced in any general legislation of Congress, were removable 'offenses' under the judiciary act, any more than its territorial courts were 'courts of the United States' in the sense of the judiciary act or of ordinary legislation. When the District of Columbia was afterwards acquired, its courts and local offenses under the local law alone were in the same category as those of the territories. That none of those courts were courts of the United States in the sense of ordinary legislation has long been adjudicated, because they do not belong to the federal system, and are not courts of the Constitution, nor created under the judicial power, but under separate authority in the Constitution to make 'all needful rules and regulations for the territories' (article 4, § 3) 'and to exercise exclusive legislation over the seat of government' (article 1, § 8)."

Numerous cases are cited in support of this position.

In my opinion the sections of the Code make it possible to employ a prisoner at hard labor who is sentenced for a misdemeanor; in other words, it makes it possible to carry out the provision of this section under consideration. While it was evidently the intention of Congress in the enactment of the federal statutes that a sentence of hard labor might be executed by imprisonment in a penitentiary, there is nothing in the Code nor in the adjudicated cases which would lead to the opinion that a crime, the punishment of which was confinement at hard labor for a term less than a year, could be considered in the light of a felony. Where the statute prescribing a penalty is susceptible of two constructions, that construction

which is most favorable to the defendant must be given by the court. Brooks v. People (Colo.) 24 Pac. 553. Hence, in my opinion, it would seem for these reasons that this crime should. be considered as a misdemeanor.

But it would seem that it was immaterial whether or not the crime be denominated a felony or a misdemeanor, since it is a statutory crime; for there is a clear cut distinction in the books between crimes known as common-law and statutory crimes, and the rules of pleading are essentially different in the two classes. In pleading a statutory crime the pleader is required under the cases to set forth in the indictment "what plainly and distinctly, in language intelligible to the defendant and his jury, individualizes every element of the crime meant." Bishop's New Criminal Procedure, § 322. The statutory crimes are declared by the Legislature for specific purposes, and the mere violation of them, irrespective of the criminal intent, no matter what the punishment may be, makes the motive immaterial. The act committed being unlawful, the exercise of a good motive is no defense. 8 Am. & Eng. Ency. of Law (2d Ed.) 281. This is the character of the statute under which these indictments are found, and I am of the opinion that the indictment sets forth with sufficient certainty all the facts constituting the crime, whether it be a felony or a misdemeanor, so that the defendant is informed of the charges against him and what is intended. The demurrer is overruled.