## BOOTH FISHERIES CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 29, 1925. Rehearing Denied August 3, 1925.)

### No. 4504.

1. Fish ⊖9—Boundaries of prohibited area for fishing near mouths of streams not determinable until mouth located by Secretary of Commerce.

Under Act June 6, 1924, § 3, prohibiting fish traps within 500 yards of mouth of creeks in Alaska, boundaries of the prohibited area cannot be determined until determination of mouth of stream by Secretary of Commerce in accordance with the act.

2. Fish ⊖9 — Determination of mouth of stream by Secretary of Commerce applies to prohibition of fishing within specified distance.

Act June 6, 1924, § 3, providing that mouth of creek shall be taken to be point determined by Secretary of Commerce applies to section 4, prohibiting taking of salmon except by certain means within 500 yards of mouths of creeks, in Alaska.

In Error to the District Court of the United States for the Territory of Alaska, Division No. 1; Thomas M. Reed, Judge.

Criminal prosecution by the United States against the Booth Fisheries Company. From a judgment of conviction, defendant brings error. Reversed and remanded.

Section 3 of Act June 6, 1924 (43 Stat. 464), provides that it shall be unlawful to erect or maintain any dam, barricade, fence, trap, fish wheel, or other fixed or stationary obstruction, except for purposes of fish culture, in any of the waters of Alaska, at any point where the distance from shore to shore is less than 1,000 feet, or within 500 yards of the mouth of any creek, stream, or river into which salmon run, excepting the Karluk and Ugashik rivers, with the purpose or result of capturing salmon or preventing or impeding their ascent to the spawning grounds, and the Secretary of Commerce is authorized and directed to have any and all such unlawful obstructions removed or destroyed. "For the purposes of this section, the mouth of such creek, stream, or river shall be taken to be the point determined as such mouth by the Secretary of Commerce, and marked in accordance with this determination." Section 4 provides that it shall be unlawful to fish for, take, or kill any salmon of any species or by any means except by hand rod, spear, or gaff in any of the creeks, streams, or rivers of Alaska, or within 500 yards of the mouth of any such creek, stream, or river over which the United States has jurisdiction, excepting the Karluk and Ugashik rivers. Section 3 of the Act of 1924, is a substantial reenactment of the same section in Act June 26, 1906 (34 Stat. 479 [Comp. St. § 3630]), but the Act of 1906 did not contain the provision that the mouth of the creek, stream, or river should be taken to be the point determined as such mouth by the Secretary of Commerce, and marked in accordance with his determination.

Two informations were filed against the Booth Fisheries Company, a corporation—the first, for maintaining a floating fish trap within 500 yards of the mouth of a small unnamed creek in Lucky Cove, Alaska; and the second, for taking fish for commercial purposes from within 500 yards of the mouth of the same creek. The first information was based on section 3 of the act, and the second on section 4. The offenses charged were alleged to have been committed on the 26th day of July, 1924, after the passage and approval of the act of that year. At the time of the commission of the alleged offenses, the Secretary of Commerce had not determined or marked the mouth of the creek or stream in question. In this state of the record the court instructed the jury that it was not material, as to either information, whether the mouth of the stream had been determined or marked by the Secretary of Commerce or not; that, in the absence of such determination and marking, the place or location of the mouth of the creek became a question of fact for the determination of the jury, under the instructions of the court, and "to this end I charge you that the mouth of a stream emptying into tidewater, is the point or place where the waters of the stream meet tidewater at mean low tide. It is not where the waters of the stream meet tidewater at high tide, but where the waters of the stream meet tidewater at mean—that is, the average—low tide."

The defendant was adjudged guilty as to both charges, and prosecuted the present writ of error.

H. L. Faulkner, of Juneau, Alaska, for plaintiff in error.

Arthur G. Shoup, U. S. Atty., and Howard D. Stabler, Asst. U. S. Atty., both of Juneau, Alaska.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] The court below was of opinion that the amendment of 1924, providing that the mouth of a stream shall be taken to be the point determined as such by the Secretary of Commerce, and marked in accordance with his determination, made no change in the then existing law, unless and until the Secretary of Commerce saw fit to exercise the authority thus conferred. In other words, that the question whether the law has been changed or not depends, not upon the law itself, but upon the action or inaction of the Secretary of Commerce. With this construction of the amendatory act we are unable to agree. Counsel for the government says in his brief: "At first glance, the mouth of a stream might be at any one of four places: (1) At low tide; (2) at high tide line on the sea beach; (3) at any point between low and high tide, the mouth shifting on the beach with the tide; and (4) above high tide line, the mouth shifting with the rise and fall of the tidal waters."

Whether counsel is correct or not we need not inquire, but the mouth of a stream cannot be ascertained with mathematical precision, and the uncertainty of the situation demonstrates the necessity for some fixed rule on the subject. Congress might itself define the mouth of a stream, or it might delegate that authority to the Secretary of Commerce, or some other officer. It chose the latter course here, and the determination of the Secretary of Commerce, when made, has the force and effect of law, at least in the absence of fraud or gross error from which fraud might be implied. The record in this case shows the difficulties encountered in the administration of the old law and the injustice that might result from such administration. The fish trap complained of has been located at the same point for a considerable number of years, without objection or protest on the part of the government. During 1923, measurements were made by government officers or agents from the trap to the mouth of the stream, and the distance was found to be upwards of 500 yards. These measurements were made from the trap to the point where the stream enters the cove. In 1924, other measurements were made, and the distance was found to be much less than the 500 yards prescribed by law. These latter measurements were made from the trap to a point on the stream where it crosses the tide flats at low tide, presumably the point where the salt and fresh waters meet at low tide. The present prosecutions are based upon these latter measurements. Where the Secretary of Commerce might locate the mouth of the stream, we, of course, do not know. A point 500 yards from the place where the fresh and salt waters meet at low tide might in some cases be less than 500 yards from the point where the stream enters the cove, and it may well be that the purposes of the statute would be best subserved by locating the mouth of the stream at the point where it enters the cove, rather than at the point on the tide flats where the fresh and salt waters meet at low tide. If located at the former point, there has been no violation of the law. But in any event the place where the mouth of the stream shall be located rests in the discretion of the Secretary of Commerce, and the location of the mouth of the stream by the Secretary is indispensable to give certainty and precision to the statute. Until that has been done, the initial point from which measurements are to be made cannot be known, and without an initial point from which to measure it would, of course, be impossible to determine the boundaries of the prohibited area.

[2] For these reasons we are of opinion that the instructions complained of are erroneous. It is suggested by counsel that these objections do not extend to the information based on section 4 of the act, because that section does not contain the provision that the mouth of a stream is the point determined to be such by the Secretary of Commerce, but in our opinion Congress never contemplated that a stream could have two mouths for the purposes of the act; one to be determined and marked by the Secretary of Commerce, the other to be fixed or ascertained by the court or jury. If the contention of counsel is correct, the trap might be lawfully maintained under section 3, but could not be lawfully used or operated under section 4. Such a contention is sufficiently absurd to refute itself.

The judgment is reversed, and the cause is remanded for a new trial.