**Thomas B. RUSTAD, Harvey R. Wyborny, Homer C. Skelley, Charles Diven and James Johnson, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 15720.**

United States Court of Appeals Ninth Circuit.

June 30, 1958.

Rehearing Denied Sept. 9, 1958.

Certiorari Denied Nov. 24, 1958.

See 79 S.Ct. 222.

**564**

------

Faulkner, Banfield & Boochever, Juneau, Alaska, for appellants.

Roger G. Connor, U. S. Atty., Jerome A. Moore, Asst. U. S. Atty., Juneau, Alaska, for appellee.

Before POPE, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

If a vessel sought to go south from the City of Wrangel situated on the northernmost tip of Wrangel Island in southeast Alaska, it could proceed along the easterly side of the island through the Eastern Passage, Blake Channel, and Anan Creek area to a point immediately south of Wrangel Island and north of Deer Island in Ernest Sound, *or*, it could sail along the westerly side of Wrangel Island through Zimovia Strait to the same point in Ernest Sound north of Deer Island. All of these named bodies of water are in the Anan section of the "Sumner Strait Regulatory District," as delineated on the Southeast Alaska Commercial Fisheries Maps, published by the United States Fish and Wildlife Service.

At about 12:30 p. m. on July 12, 1956, the defendants' vessel was found fishing commercially at a point allegedly located within Zimovia Strait. The Captain and four members of the crew (appellants herein) were arrested, and charged with a violation of 48 U.S.C.A. § 222,[1] which makes violations of regulations issued by the Secretary of Interior under the authority of 48 U.S.C.A. § 221, criminal offenses. 48 U.S.C.A. § 226[2] provides for fine and imprisonment for any such violation, *i. e.*, fishing in a closed area. The regulations which defendants were charged in the information with violating were sections 121.3 and 121.4 of Alaska Commercial Fisheries Regulations, 1956.

The case was tried before a jury in the District Court of the First Judicial Dis-

1. Title 48 U.S.C.A. § 222. "Unlawful fishing in areas; no exclusive rights to be granted; citizens

"From and after the creation of any such fishing area and during the time fishing is prohibited therein it shall be unlawful to fish therein or to operate therein any boat, seine, trap, or other gear or apparatus for the purpose of taking fish; and from and after the creation of any such fishing area in which limited fishing is permitted such fishing shall be carried on only during the time, in the manner, to the extent, and in conformity with such rules and regulations as the Secretary prescribes under the authority herein given: *Provided*, That every such regulation made by the Secretary of the Interior shall be of general application within the particular area to which it applies, and that no exclusive or several right of fishery shall be granted therein, nor shall any citizen of the United States be denied the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska where fishing is permitted by the Secretary of the Interior. June 6, 1924, c. 272, § 1, 43 Stat. 464; June 18, 1926, c. 621, 44 Stat. 752; 1939 Reorg. Plan No. II, § 4(e), eff. July 1, 1939, 4 F.R. 2731, 53 Stat. 1433."

2. Title 48 U.S.C.A. § 226. "Violation of fishing laws; punishment; forfeiture

"Any person, company, corporation or association violating any provisions of sections 221–228 or 230–241 of this title, or of any regulation made under authority of said sections shall, upon conviction thereof be punished by a fine not exceeding $5,000 or imprisonment for a term of not more than ninety days in the county jail or by both such fine and imprisonment, and in case of the violation of section 233 of this title there may be imposed a further fine not exceeding $250 for each day the obstruction therein declared unlawful is maintained. Every boat, seine, net, trap and every other gear and appliance used or employed in violation of said above-mentioned sections and all fish taken therein or therewith shall be forfeited to the United States and shall be seized and sold under the direction of the court in which the forfeiture is declared at public auction and the proceeds thereof after deducting the expenses of sale shall be disposed of as other fines and forfeitures under the laws relating to Alaska. Proceedings for such forfeiture shall be in rem under the rules of admiralty. June 6, 1924, c. 272, § 6, 43 Stat. 466."

trict of Alaska where Zimovia Strait is located. (48 U.S.C.A. § 101.) The sole issue submitted to the jury was whether or not appellants' boat was fishing in Zimovia Strait. All defendants were convicted. A motion for a judgment notwithstanding the verdict was denied. Captain Rustad was fined $1,500, the crew $750 each; and the balance of their catch was forfeited. Appeal lies here. 28 U.S.C. § 1291.

Alaska Fisheries Regulations Section 121.4, in effect on July 12, 1956, and for some time prior thereto, reads:

> "With the exception of Ernest Sound and the vicinity of Anan Creek, fishing * * * is prohibited except from * * * July 20 * * *." 3

Alaska Fisheries Regulations Section 121.3 read on July 10th and prior thereto as follows:

> "Fishing * * * in Ernest Sound and the open waters in the vicinity of Anan Creek (excluding Zimovia Strait) is prohibited except from * * * July 15 * * *." 4

On July 11, 1956, Regulation § 121.3 was amended to strike the words "July 15" and to substitute therefor the words "July 12." This amendment was published at Washington, D. C., on July 11, 1956. The early opening day information was conveyed to the Fish & Wildlife Service in Alaska by telegram which read as follows:

> "Alaska Fishery Regulation 121.3 amended to open Anan and Ernest Sound section at six o'clock antemeridian July twelve. This action taken because adequate early escapement

of pink salmon assured in Anan Creek as revealed by ground survey of stream and aerial survey of approaches by FWS officials July seven. Advise interested parties." [Defendants' Exhibit A.]

It is noted this contained a specific reference by number to the regulation amended, and instructed the Wildlife Service to inform all interested parties. The Service sent telegrams to various fisheries asking that interested parties be advised of the earlier opening date, but these telegrams contained no reference to the regulation number. They read:

> "The *Ernest Sound* and *Anan section* of the Sumner Strait District will open at 0600 am July 12 instead of July 15, Please advise interested parties." [Defendants' Exhibit B.]

Appellants claim error because:

(1) Failure of the court to rule as a matter of law that the regulation was invalid because of indefiniteness.

(2) The two telegrams amended the regulation sought to be enforced so as to open Zimovia Strait for fishing on July 12, or estopped the government to deny it was open.

(3) The same telegrams rendered the regulations invalid because of indefiniteness.

(4) Failure to give defendants' requested instruction No. 1.

(5) The giving of Government Instruction No. 10.

(6) In withholding government Exhibits A and B from the jury room.

█ The indefiniteness relied on in point one is the use of the term "Zimovia

3. Alaska Fishery Regulations § 121.4 reads in its entirety:
"*Open season; exception.* With the exception of Ernest Sound and the vicinity of Anan Creek, fishing, other than trolling, is prohibited, except from 6 o'clock antemeridian July 20 to 6 o'clock postmeridian August 24. During this season the weekly closed period, except for trolling, is extended to include the period from 6 o'clock postmeridian Friday to 6 o'clock antemeridian Monday."

4. Alaska Fishery Regulations § 121.3 read in its entirety:
"*Open season, Ernest Sound and Anan.* Fishing, other than trolling, in Ernest Sound and the open waters in the vicinity of Anan Creek (excluding Zimovia Strait) is prohibited except from 6 o'clock antemeridian July 15 to 6 o'clock postmeridian August 18. During this season the weekly closed period, except for trolling, is extended to include the period from 6 o'clock postmeridian Friday to 6 o'clock antemeridian Monday."

Strait." Appellants point to their Exhibit C, a United States Department of Agriculture Map delineating the boundaries of the "Tongass National Forest," extending some eight hundred miles north and south. It is true that from that government map it would be difficult, though not impossible, to determine where Zimovia Strait starts and ends. But we assume accomplished seamen would not rely on a Department of Agriculture Map any more than they would rely on an oil company's road map, or a World Atlas showing the North Pacific Ocean on one page. On Appellee's Exhibit 1, for example, the Zimovia Straits are clearly marked and can hardly be missed by anyone reading the navigational chart (which that Exhibit is) with the degree of intelligence to be expected of the licensed master of a vessel. These commercial fishermen were not Sunday sailors landlocked most of the week. They used a map with fathoms, shoalings and magnetic compass markings on it. Government's Exhibit 1 was in fact on the fishing vessel at the time of arrest. As might be expected, it was a United States Coast and Geodetic Survey Map, No. 8161, covering "Ernest Sound, Eastern Passage, and Zimovia Strait," a total area extending some forty to fifty miles north and south. The point of arrest and the point where the vessel was fishing was 1.4 miles northwest of Thorns Point and immediately opposite the letter "R" in the words Zimovia Strait, as they appear on this map then being used.

Of the many fishing boats out on the opening day, none but this captain and crew had any difficulty in determining the limits of Zimovia Strait and where they should not fish.

Appellants cite in support of their position that Zimovia Strait is an indefinite description of the boundaries of the proscribed territory those cases involving fishing at the mouth of rivers where the limits of the river's mouth have not been designated by statute, such as Booth v. United States, 9 Cir., 1925, 6 F.2d 500. From this it is argued that either the exact longitude or latitude of the area must be stated, or that the area itself must be physically marked—that without such aids the regulation, of necessity, was so uncertain and indefinite as to be unenforceable for lack of due process. Appellee does not dispute the validity of such a rule of law, but urges that it is not here applicable, that the statutes employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, or having a well settled common-law meaning. Connally v. General Construction Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322.

With two valid theories of law presented, within which should this regulation fall? Our opinion is that the regulation is reasonably clear for the purposes intended. Zimovia Strait is clearly marked on the maps introduced in evidence. Zimovia Strait is no river mouth which may have a changing and indeterminate location, but a well-defined land conformation clearly marked on the official charts of the United States Coast & Geodetic Survey Maps. It would seem that the reference to Zimovia Strait in the regulation would be perfectly clear to those concerned and technically qualified, as would be commercial fishermen in the area.

■ Defendants' second point is that the telegrams of July 11(a) either opened Zimovia Strait to fishing or (b) at least are sufficient to estop the government from prosecuting those reasonably relying on those telegrams, or (c) they amend the regulation to make it vague and indefinite and therefore invalid. Appellee counters that the telegram (Exhibit A) is not capable of any interpretation other than the one found by the trial court—that it merely changed the opening dates for fishing in the areas covered by § 121.3, i e., Ernest Sound and the Anan Creek areas, *excluding the Zimovia Strait area.*

The trial court was correct in his view that the telegrams were not ambiguous or subject to any interpretation other than that a change in opening day had occurred. These defendants were commercial fishermen; their whole livelihood was regulated by the Secretary of the In-

terior pursuant to these regulations. They certainly were or should have been familiar with them. The telegram to the Wildlife Service (Exhibit A) specifically names the section being amended and thereby eliminates all possibility of confusion. The wire to the Fisheries (Exhibit B) names the districts only, but mentions the original date of July 15th, thus indicating first, that only the day is being changed, and second, that no areas subject to an opening day other than July 15th (such as those governed by the July 20th date of § 121.4 which *includes* Zimovia Strait) are affected by the amendment. Any other interpretation would render the reference to July 15th meaningless.

In support of the argument for ambiguity, appellants point out that it was broad daylight, that they were not hiding, and that they did not run from sight of the arresting officer's plane. Appellee points out in reply that of the two hundred and seventy-five boats out on opening day near the legal areas, appellants' boat was the only one in the forbidden area. We think the trial judge was correct in his conclusion that the meaning and effect of the amending telegrams was not ambiguous.

■ Once it is established that the regulation was not ambiguous and did not open the area to fishing, any instruction on reliance upon ambiguity becomes irrelevant and is nothing more than an attempt to get before the jury that issue of law, and its interpretation, decided against appellants by the court as a matter of law.

As to the instruction concerning burden of proof, it was concerned only with the absence of need to prove intent—to that end the court said the government need only prove the act. However, instructions 3 and 4 stated the government's entire burden correctly; No. 5 was devoted solely to the subject of reasonable doubt. And, No. 18 warned the jury not to consider just one instruction, but to make their decision in the light of all the instructions given. No. 10, complained of, in no way misled the jury and

was not intended nor did it in fact establish a different burden of proof.

■ Exhibits A and B were properly withheld from the jury after the court had decided as a matter of law the jury could not determine the alleged questions of ambiguity and estoppel. If correct in its rulings, as we have said it was, there could be no purpose in submitting Exhibits A and B to the jury.

The judgment is *affirmed*.

POPE, Circuit Judge (concurring).

I find myself in accord with substantially everything that is stated in the court's opinion. The only qualification I would make is the statement that the date of Sec. 121.4 includes Zimovia Strait. Had the appellants raised the point I think it would be a serious question whether the prohibition stated in that section extended to Zimovia Strait, thus raising doubt as to whether there was any closed season in that strait. The section contains an express exception: "With the exception of Ernest Sound and the vicinity of Anan Creek". But that area would appear to include Zimovia Strait, for the drafters of Sec. 121.3 found it necessary to make an express exclusion of this strait. That is, a reading of 121.3 seems to indicate that "Ernest Sound and * * * the vicinity of Anan Creek", so described, would ordinarily include Zimovia Strait.

But such a point was not preserved at the trial nor made in the specifications of error here. If the matter were entirely clear, and if it were plain that the regulations simply did not provide any prohibitions as to Zimovia Strait, we might be called upon to notice the point as a plain error under Criminal Rule 52(b), 18 U.S.C. But I am satisfied that the matter is not so plain, but that there is sufficient ambiguity in this part of the regulations so that we may accept the administrative construction of the section under the rule of Norwegian Nitrogen Products Co. v. U. S., 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796, and cases there cited. Cf. Doyle v. Fox, 9 Cir., 234

F.2d 830, 833. Hence we are not called upon to notice a point not made by the parties.

On Petition for Rehearing

PER CURIAM.

The petition for rehearing is denied.

POPE, Circuit Judge (dissenting).

In my concurring opinion of June 30, 1958, I noted the reason there is doubt as to whether there was any closed season in Zimovia Strait at the time stated in the information. However I stated my concurrence in the judgment of affirmance on the ground that the point had not been raised at the trial or on appeal here and I felt that under the circumstances we would not be called upon to notice the point as a plain error under Fed.Rules Crim.Proc. Rule 52(b), 18 U.S.C.

Upon the petition for a rehearing appellants have called attention to the fact that if the regulations did not provide any prohibition as to Zimovia Strait, then the information did not state an offense. They also note that under Criminal Rule 12(b) (2), the failure of an information to charge an offense shall be noticed by the court at any time. The petition further suggests that there is no substantial proof of an administrative construction of the regulations such as that which I refer to in my former opinion.

I am bearing in mind the proposition that a person should not be fined or imprisoned for violation of a statute or regulation which is ambiguous or uncertain. Since I think it is a serious question whether the regulations, as framed, actually prohibited fishing in Zimovia Strait at the time in question, I think now that we should grant a rehearing since Rule 12(b) (2) would appear to make it appropriate for us to consider the matter.

It is suggested that at the time of the alleged offense appellants had reason to *think* the regulations covered this area, and did not then act in reliance upon these defects. Thus other fishermen stayed away.

I would doubt that a person could be convicted of violation of a regulation that did not cover his case, just because the accused thought it did.