Aleck CONSTANTINE, Appellant,

v.

STATE of Alaska, Appellee.

David BYAYUK, Appellant,

v.

STATE of Alaska, Appellee.

George KOKTELASH, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–1247, A–1409 and A–1414.

Court of Appeals of Alaska.

July 2, 1987.

Rehearing Denied July 31, 1987.

Lisa M. Fitzpatrick, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant Constantine.

Barbara K. Brink, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellants Koktelash and Byayuk.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This case raises the question of what noncriminal penalties the court is authorized to impose for the violation of a regulation.[1] In *Beran v. State*, 705 P.2d 1280 (Alaska App.1985), we dealt with Fish and Game Regulation 5 AAC 39.002 which provides:

> *Liability for Violations.* Unless otherwise provided in 5 AAC 01–5 AAC 41 or in AS 16, a person who violates a provision of 5 AAC 01–5 AAC 41 is strictly liable for the offense, regardless of his intent.

We concluded that the Board of Fisheries, in passing this regulation, intended to au-

---

**1.** Aleck Constantine was found to be in violation of a regulation, based upon a no contest plea, for fishing in closed waters. 5 AAC 06.350(f). District Court Judge John D. Mason imposed a fine of $2,500, all suspended, and placed Constantine on probation for two years. Judge Mason ordered $6,797.60 worth of fish and 150 fathoms of gill net forfeited to the state.

David Byayuk was found to be in violation of a regulation, based upon a no contest plea, for fishing in closed waters. 5 AAC 06.350(f). Superior Court Judge S.J. Buckalew, Jr., imposed a fine of $5,000 with $3,000 suspended. The

suspension was conditioned on no similar violations for one year. The fish on board the vessel, valued at $6,094.62, and three shackles of net were forfeited to the state.

George Koktelash was found to be in violation of a regulation, based upon his no contest plea, for fishing outside the Naknek subdistrict. 5 AAC 06.320(e). Judge Buckalew imposed a fine of $2,000, all suspended. The suspension was on the condition of no similar violations within one year. Judge Buckalew ordered the forfeiture of the gear and fish on board the vessel.

thorize the imposition of criminal penalties for fishing regulations even if the defendant had acted without negligence. *Beran,* 705 P.2d at 1284. However, we held that we could not find that the Board of Fisheries was authorized to criminalize violations which occurred without negligence where the legislature had not specifically given it that authority. *Id.* at 1284–85. We concluded that, under these circumstances, in order for a court to impose criminal penalties for the violation of a fishing regulation, proof of at least a *mens rea* of negligence was necessary. *Id.* at 1291.

In *Beran,* we also concluded that the legislature did authorize the Board of Fisheries to make the breach of a regulation punishable by a noncriminal fine without proof of a culpable *mens rea. Id.* at 1283–84. However, we did not decide what noncriminal penalties could be imposed. *Id.* at 1284 n. 4. In this appeal, we are asked to determine what penalties the legislature intended to be available to sanction those found in violation of fish and game regulations where the state elects to proceed on a theory of strict liability.

The appellants point to the definition of a "violation" as it is defined in AS 11.81.-900(b)(56):

"violation" is a noncriminal offense punishable only by a fine, but not by imprisonment or other penalty; conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime; a person charged with a violation is not entitled

(A) to a trial by jury; or

(B) to have a public defender or other counsel appointed at public expense to represent the person....

The appellants cite AS 12.55.035(b)(5) which sets a maximum fine of $300 for a violation and AS 12.85.010 which states that the provisions of Title 12 "apply to all criminal actions and proceedings in all courts except where specific provision is otherwise made...." They contend, therefore, that a $300 fine is the maximum sentence which may be imposed for a strict liability violation of fish and game regulations.

The state contends that it is a misconception to assume that AS 12.85.010 precludes reference to any penalty provision other than AS 12.55.035(b)(5) for fish and game violations under Title 16. The state urges us to apply the penalty sections, except those which provide for imprisonment, set forth in AS 16.05.720(a) and (c) and AS 16.05.195.[2] These penalties involve fines of

**2.** Alaska Statute 16.05.720 states in pertinent part:

*Penalties.* (a) Except as modified by (c) of this section, a person who violates AS 16.05.-480–16.05.690 or the regulations of the department pertaining to commercial fisheries is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $5,000, or by imprisonment for not more than one year, or by both.

....

(c) A person who is convicted of commercial fishing in closed waters, commercial fishing during a closed period or season, or commercial fishing with unlawful gear including but not limited to nets, pots, tackle, or other devices designed or employed to take fish commercially, is guilty of a misdemeanor and in addition to the penalty imposed under (a) of this section is punishable by a fine of not less than the gross value to the fisherman of the fish found on the vessel or at the fishing site at the time of the violation. Upon a third conviction of a person for a violation under this subsection, and in addition to the forfeiture provision in AS 16.05.710, the fine shall be not less than three times the gross value to the fisherman of the fish found on the vessel

or at the fishing site, or, if no fish are found on the vessel or at the fishing site, a fine of not more than $10,000.

Alaska Statute 16.05.195 states:

*Forfeiture of equipment.* (a) Guns, traps, nets, fishing gear, vessels, aircraft, other motor vehicles, sleds, and other paraphernalia or gear used in or in aid of a violation of this title, or regulation adopted under this title, and all fish and game or parts of fish and game or nests or eggs of birds taken, transported or possessed contrary to the provisions of this title, or regulation adopted under it, may be forfeited to the state

(1) upon conviction of the offender in a criminal proceeding of a violation of this title in a court of competent jurisdiction; or

(2) upon judgment of a court of competent jurisdiction in a proceeding *in rem* that an item specified above was used in or in aid of a violation of this title or a regulation adopted under it.

(b) Items specified in (a) of this section may be forfeited under this section regardless of whether they were seized before instituting the forfeiture action.

(c) An action for forfeiture under this section may be joined with an alternative action for

up to $5,000 and the forfeiture of fish and gear.

After closely examining the question of what noncriminal sanctions might be appropriate for violations of fisheries regulations, we conclude that the legislature simply has not addressed this problem. We are reluctant to assume that the legislature intended to allow imposition of the maximum permissible noncriminal sanctions in the face of legislative silence. The cases before us involve the imposition of large fines and forfeiture of fish and gear in cases where there has been no proof that the defendants acted with negligence. In *Beran*, Chief Judge Bryner, in a concurring opinion, concluded that the due process clause of the Alaska Constitution, art. 1 § 7, precluded imposition of criminal sanctions for an offense where there had been no proof of a minimum *mens rea.* 705 P.2d at 1292. In my concurring opinion in *Beran*, I recognized that this due process issue raised a serious question, but found it unnecessary to resolve this issue under the facts of *Beran*.[3] *Id.* at 1293.

We consider the imposition of substantial penalties for the violation of an offense without proof of mental culpability to be a serious matter. We recognize that other states and the federal government have allowed the imposition of substantial sanctions, including imprisonment, without proof that an offense was committed with a culpable mental state. However, before the courts are authorized to impose these sanctions, in light of the due process implications under the Alaska Constitution, we

believe that the legislature should specifically indicate that it is necessary to impose substantial penalties. The legislature should also establish the nature of these penalties, even if they can be properly denominated as noncriminal penalties.

We believe that it is sufficiently clear that the legislature has approved at least the imposition of a maximum fine of $300 for a noncriminal violation. AS 12.55.-035(b)(5). We also believe that it is clear that the legislature intended to authorize the court to order the forfeiture of any fish or game obtained in violation of a regulation. We see no reason to allow a defendant, even if he or she acted without fault, to have a valid claim to fish or game obtained in violation of a regulation. We believe that AS 16.05.190 and AS 16.05.195 provide sufficient legislative authorization for this action. However, we are unwilling to go beyond this point without a clearer indication of legislative intent.

The sentences are REVERSED and the cases are REMANDED for resentencing consistent with this opinion.[4]

BRYNER, Chief Judge, concurring.

In order to avoid the possibility that the dissent might engender some degree of confusion, I think it appropriate to summarize my understanding of the limited scope and effect of our decision in *Beran v. State*, 705 P.2d 1280 (Alaska App.1985), and in the present case.

damages brought by the state to recover damages for the value of fish and game or parts of them or nests or eggs of birds taken, transported or possessed contrary to the provisions of this title or a regulation adopted under it.

(d) It is no defense that the person who had the item specified in (a) of this section in possession at the time of its use and seizure has not been convicted or acquitted in a criminal proceeding resulting from or arising out of its use.

(e) Forfeiture may not be made of an item subsequently sold to an innocent purchaser in good faith. The burden of proof as to whether the purchaser purchased the item innocently and in good faith shall be on the purchaser.

(f) An item forfeited under this section shall be disposed of at the discretion of the department. Before the department disposes of an

aircraft it shall consider transfer of ownership of the aircraft to the Alaska Wing, Civil Air Patrol.

3. In *Beran v. State*, 705 P.2d 1280 (Alaska 1985), the narrow holding of the case was that, unless specifically authorized by the legislature, criminal sanctions could not be imposed for the violation of a fishing regulation without proof of a *mens rea* of at least negligence.

4. Constantine claims that the trial court erred in ordering the forfeiture of all of the fish on board his vessel. He argues that the state failed to show that all the fish were fruits of the violation. Our decision to remand for resentencing makes it unnecessary for us to decide this issue.

In *Beran,* we held that, absent express legislative authorization, the Board of Fisheries was not empowered to create a strict liability offense punishable by criminal sanctions. We nonetheless concluded that the regulation challenged in that case could be enforced as a strict liability offense but only if punished exclusively by noncriminal penalties. We expressly left open the question of what penalties might be considered permissible. *Beran,* 705 P.2d at 1283–84 and n. 4.

Our decision today provides a partial answer to the question we left open in *Beran:* we hold only that, in the absence of more specific legislation, the challenged regulation, when enforced as a strict liability offense, is punishable under the provisions applicable to noncriminal violations under AS 12.55.035(b)(5).

We do not purport to restrict the legislature from adopting other, more stringent noncriminal penalty provisions. Nor do we restrict the state from invoking the full force of the sanctions already provided for under Title 16, by prosecuting violators for negligent, rather than innocent, acts. *See Reynolds v. State,* 655 P.2d 1313 (Alaska App.1982).

SINGLETON, Judge, dissenting.

These consolidated cases present a single issue: What penalties has the legislature prescribed for violations of commercial-fishing regulations?[1] It appears to me that the legislature has clearly and unambiguously manifested its intention that the only penalties provided for commercial-fishing violations are to be found in AS 16.05.-720(a) and (c). A contrary holding constitutes statutory repudiation, not statutory interpretation.[2]

Alaska Statutes 16.05.010–.950 constitute the Fish and Game Code. *See* AS 16.05.-950. Alaska Statute 16.05.720 is part of this code and was clearly intended by the legislature to provide the penalties for all commercial-fishing violations. *See Theodore v. State,* 407 P.2d 182 (Alaska 1965), *cert. denied,* 384 U.S. 951, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966). This is clear from the plain wording of AS 16.05.720, which provides:

> (a) Except as modified by (c) of this section, a person who violates AS 16.05.-480–16.05.690 [statutes regulating commercial fishing] or the regulations of the department pertaining to commercial fisheries is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $5,000, or by imprisonment for not more than one year, or by both.

By its terms, the statute applies to anyone who violates a commercial-fishing regulation. It makes no mention of *mens rea.* Reading the statute as the exclusive penalty provision for these violations is reinforced by AS 16.05.925, enacted in 1984, which provides in relevant part:

> A person who violates AS 16.05.920, or a regulation adopted under this chapter or AS 16.20, is guilty of a class A misdemeanor. *However, a person who violates a regulation adopted under this*

---

1. The majority has mischaracterized the question as "what *noncriminal* penalties the court is authorized to impose for the violation of a [commercial-fishing] regulation." *See supra* p. 2 (emphasis added). The mischaracterization comes from the majority's initial failure to recognize legislative supremacy in providing penalties for violations of law, and also from the majority's failure to recognize that AS 16.05.-720(a)–(c) were all enacted in 1959. *See* ch. 94, art. I § 23, art. III § 12 (1959). As I shall show, a fine in any amount was a "criminal penalty" at that time. *See* § 65–2–1 ACLA (1949) which provided:

   "Crime" defined. That a crime or public offense is an act or omission forbidden by law, and punishable, upon conviction, by either of the following punishments: First.

Death; Second. Imprisonment; Third. Fine; Fourth. Removal from office; Fifth. Disqualification to hold and enjoy any office of honor, trust, or profit.

   This section was amended by ch. 132, § 2, SLA 1957 to abolish capital punishment, and was renumbered after codification without significant change as former AS 11.75.020. This section was repealed in 1978.

2. The extent to which seizure and forfeiture of gear is also available as a penalty for a violation of a commercial-fishing regulation is governed by AS 16.05.190 and AS 16.05.195. *See also* § 39–2–10 ACLA (1949), which governed "forfeitures" for violations of fishing regulations prior to statehood.

*chapter for the regulation of commercial fisheries is subject to the penalties set out in AS 16.05.720.* [Emphasis added.]

*Compare* AS 16.05.900 (a person who violates AS 16.05.870–.895 is guilty of a class A misdemeanor [and implicitly subject to the penalties prescribed in AS 12.55.035]).

The majority does not explain why it finds these statutes inapplicable to these consolidated cases. It does not contend that they are ambiguous. It appears to mistakenly conclude that because the legislature refers to a violation of a commercial-fishing regulation as a "misdemeanor," this somehow excludes strict-liability offenses and renders the described penalties inapplicable in the absence of a finding of *mens rea*.[3] This would seem to be the only explanation for the court ignoring the plain language of AS 16.05.720 and looking instead to AS 12.55.035. If this is the basis for the majority's action, its error comes from failing to recognize that the Fish and Game Code was enacted in 1959, long before the adoption of the Revised Criminal Code or AS 12.55.035.[4] Further, in 1959, any violation of law punishable by a fine was a crime. *See* § 65–2–1 ACLA (1949) (former AS 11.75.020). And, any crime that was not a felony was a misdemeanor. *See* former AS 11.75.030, which provided:

Crimes are divided into felonies and misdemeanors. A felony is a crime which is or may be punishable by imprisonment for a period exceeding one year. Every other crime is a misdemeanor. [*See also* ] § 65–2–2 ACLA (1949).

**3.** It is difficult to respond to the majority opinion in the absence of any reasons for its conclusions beyond a hinted antipathy to strict liability. I have, therefore, assumed that references to "misdemeanors" in AS 16.05.720 explain the majority's decision.

**4.** And long before this court's decisions in *Beran v. State,* 705 P.2d 1280 (Alaska App.1985), and *Reynolds v. State,* 655 P.2d 1313 (Alaska App. 1982). Consequently, the concerns voiced in those decisions could not have influenced the legislature's choice of language.

**5.** In *United States v. Alaska Packers' Ass'n and Babler,* 1 Alaska 217 (D.Alaska 1901), the court considered a prosecution which was apparently brought under former §§ 180, 183 of the Alaska

Consequently, there is no reason to believe that a prudent legislator, contemplating enactment of what would become AS 16.05.720, would have considered it inconsistent to treat a violation of a commercial-fishing regulation as a strict liability offense, and to term such a violation a misdemeanor carrying a penalty of up to one year imprisonment and a fine of up to $5,000. This conclusion is reinforced by the way fishing violations were being treated at the time these statutes were enacted. Prior to statehood, unlawful fishing in Alaska was regulated by federal law. *See* 48 U.S.C. § 222 (1952). *See also* § 39–2–10 ACLA (1949) (codifying federal law). The predecessor to AS 16.05.720 was 48 U.S.C. § 226 (1952) (§ 39–2–10 ACLA (1949)), which provided in relevant part:

Any person, company, corporation or association violating any provisions of sections 221–228 or 230–241 [statutes regulating commercial fishing in the territory of Alaska] of this title, or of any regulation made under authority of said sections shall, upon conviction thereof be punished by a fine not exceeding $5,000 or imprisonment for a term not more than ninety days in the county jail or by both such fine and imprisonment....

The federal courts had consistently interpreted violations of the commercial-fishing regulations as "misdemeanors." *United States v. Doo-Noch-Keen,* 2 Alaska 624, 628 (D.Alaska 1905). *But see United States v. Alaska Packers' Ass'n and Babler,* 1 Alaska 217, 224 (D.Alaska 1901).[5]

Penal Code, and concluded that a fish and game violation was a felony. It then concluded that criminal intent was a necessary element. *Id.* at 224. The court did not explain why it thought the offense was a felony. In later cases, it was argued that a provision in § 183 providing for "imprisonment at hard labor for a term not exceeding ninety days" made a fishing violation a "felony." Apparently, under federal law, imprisonment at hard labor was limited to penitentiaries, and imprisonment in penitentiaries was limited to felonies. *United States v. Doo-Noch-Keen,* 2 Alaska 624, 626 (D.Alaska 1905). In *Doo-Noch-Keen,* the court concluded that this principle of federal law did not apply to fishing violations, which it held were misdemeanors. In any event, the court concluded that, whether a felony or a misdemeanor, a fishing violation

The courts had just as consistently held violations to be strict-liability offenses. *Doo-Noch-Keen,* 2 Alaska at 628; *see also Rustad v. United States,* 258 F.2d 563, 565–67 (9th Cir.), *cert. denied,* 358 U.S. 898, 79 S.Ct. 222, 3 L.Ed.2d 149 (1958) (in prosecution for fishing in a closed area appellate court pointed out that sole issue submitted to jury was whether appellant's boat was fishing in a closed area; the court approved instructions informing jury that there was no need to prove intent and that the government need only prove an act in violation of the regulation).

In summary, a legislature in 1959, contemplating the enactment of legislation providing for penalties for fishing violations, would not have seen any inconsistency in calling a violation a misdemeanor and in imposing strict liability, since that was the accepted practice at the time. Nor would it have considered referring to the trial of such a case as a "criminal" proceeding, or referring to the penalty imposed as a "criminal" penalty inconsistent with strict liability. Consequently, the use of the term "misdemeanor" in AS 16.05.720, standing alone, cannot support a finding that the legislature intended that the penalties provided in that section would not apply in the absence of a finding of *mens rea.*

There is nothing in AS 12.55.015 or AS 12.55.035(a) which is inconsistent with looking to AS 16.05.720 as the exclusive source of penalties for violations of commercial-fishing regulations. Alaska Statute 12.55.-015 indicates that a court may impose a fine on a person convicted of an offense,

when authorized by law, and as provided in AS 12.55.035; AS 12.55.035(a) states that "[u]pon conviction of an offense, a defendant may be sentenced to pay a fine as authorized in this section or as otherwise authorized by law...." Alaska Statute 16.05.925 clearly establishes that penalties for commercial-fishing violations are to be found in AS 16.05.720, *i.e.,* are "otherwise authorized by law," and, by implication, are not to be found in AS 12.55.035. Consequently, AS 16.05.720 serves to take commercial-fishing violations out of AS 12.55.-035.

Nor do the definitions in the Revised Criminal Code, which went into effect for the first time in 1980,[6] point to a different result. The introductory paragraphs to these definitions make it clear that they are intended only "for purposes of this title," or "as used in this title," *i.e.,* Title 11. *See, e.g.,* 11.81.900(a) & (b). Thus, they have no bearing on the proper interpretation to be given to the fish and game statutes in Title 16, enacted over twenty years earlier. More significantly, AS 11.81.600, which requires a culpable mental state unless an offense is specifically labeled a "violation," or "is designated as one of strict liability," is one of a series of statutes expressly made inapplicable outside of the Revised Criminal Code and therefore has no bearing on Title 16 offenses. *See, e.g.,* AS 11.81.640 ("AS 11.81.600–11.81.630 [general principles of criminal liability] apply only to this title").

The majority offers no reasons why AS 16.05.190–.195, governing forfeitures, are

was a "statutory crime" and not a common law crime and, therefore, no showing of criminal intent was required. *Id.* at 628. It appears clear that fishing violations were thereafter considered misdemeanors, not felonies. *United States v. Kono,* 4 Alaska 613, 621 (D.Alaska 1912).

6.  *See, e.g.,* AS 11.81.900(b)(9) "crime" means an offense for which a sentence of imprisonment is authorized; a crime is either a felony or a misdemeanor; (b)(19) "felony" means a crime for which a sentence of imprisonment for a term of more than one year is authorized; (b)(31) "misdemeanor" means a crime for which a sentence of imprisonment for a term of more than one year may not be imposed; (b)(33) "offense" means conduct for which a

sentence of imprisonment or a fine is authorized; an offense is either a crime or a violation; and, finally, (b)(56) "violation" is a noncriminal offense punishable only by a fine, but not by imprisonment or other penalty; conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime; a person charged with a violation is not entitled (A) to a trial by jury; or (B) to have a public defender or other counsel appointed at public expense to represent the person.

These definitions replaced those in former AS 11.75.020 and AS 11.75.030 (recodifying § 65-2-1 (ACLA 1949)). It was these now repealed statutes which were in force when AS 16.05.720 was first enacted.

inapplicable to these appellants. Alaska Statute 16.05.190 does not refer to a "misdemeanor" but simply requires a conviction of the offender. Again, looking at this language as it would have been interpreted in 1959, when the statute was enacted, anyone violating a commercial-fishing regulation was subject to conviction in a criminal proceeding if he or she was subject to a fine of any amount, including $300. The majority does not dispute the fact that forfeiture is an appropriate penalty for a violation of a commercial-fishing regulation. *See Graybill v. State*, 545 P.2d 629 (Alaska 1976) (forfeiture after conviction of commercial-fishing regulation can take place without recourse to separate civil *in rem* forfeiture proceeding). *See also F/V American Eagle v. State*, 620 P.2d 657 (Alaska 1980). There is nothing in Title 12 inconsistent with permitting forfeitures in this case. Alaska Statute 12.55.015(c) clearly permits forfeitures where authorized by law. Similarly, AS 16.05.190–.195 authorize forfeitures for violations of commercial-fishing regulations.

In conclusion, a fair reading of the applicable statutes clearly establishes that the penalties authorized in AS 16.05.720, and not the fines authorized in AS 12.55.035, were intended by the legislature as the exclusive source of penalties for violations of commercial-fishing regulations. There is nothing in Title 11, Title 12, or Title 16 limiting the availability of forfeiture or fines under $5,000 as a remedy for fishing violations.[7] I would therefore affirm the decisions of the district court.[8]

---

**7.** A pervasive theme underlying the majority opinion is a supposed Alaska Constitution limitation on legislative authority to impose strict liability for commercial-fishing violations. No such limitation exists! A proposed Alaska Constitution was debated by popularly elected delegates during the winter of 1955–56. The constitution was approved by the voters and the United States Congress, and took effect on January 2, 1959, when President Eisenhower signed the official statehood proclamation. *See* V. Fischer, *Alaska's Constitutional Convention* 3 (1975).

As Mr. Fischer, a delegate to the convention, points out:

In drafting the declaration of rights, the committee and the convention were generally unwilling to let go of tradition. As a result, Article I of the Alaska Constitution includes standard provisions contained in other state constitutions and in the first ten amendments to the United States Constitution.... A few changes were made pertaining to then current problems in the area of government-individual relationships, but largely deliberations on this article [Article I Declaration of Rights] were more significant with respect to subject matter that was kept out of the constitution than the provisions that were included.

*Id.* at 70.

My independent review of the minutes of the convention bears out Mr. Fischer's conclusions. *See* 6 Proceedings of the Alaska Constitutional Convention (PACC) App. V at 71 (December 15, 1955). *See also* 2 PACC at 1446–50; 1446–49 (January 7, 1956). There certainly were specific areas in which the constitutional convention wished to provide greater protection to criminal defendants than was found in the Bill of Rights. But this was the exception, not the rule. Thus, the oft-repeated statement that the drafters of the Alaska Constitution intended to provide criminal defendants substantially greater protection than was then current under federal law would appear to be largely judicial myth without a basis in historical fact. *But see Breese v. Smith*, 501 P.2d 159, 167 n. 30 (Alaska 1972); *State v. Browder*, 486 P.2d 925, 936–37 (Alaska 1971); *Glasgow v. State*, 469 P.2d 682, 686 (Alaska 1970); *Roberts v. State*, 458 P.2d 340, 342 (Alaska 1969).

It is not necessary to explore this general point further, however, because the legislature's right to establish strict liability for commercial-fishing violations seems especially constitutionally secure. Prior to statehood, Alaska law was federal law and the rights of its citizens were those rights established under the United States Constitution and those statutes implementing it and enacted by the United States Congress. *See* V. Fischer, *Alaska's Constitutional Convention* 69. Strict liability for violation of statutory, *i.e.*, noncommon law, offenses was firmly established in federal law at that time. *United States v. Dotterweich*, 320 U.S. 277, 284, 64 S.Ct. 134, 138, 88 L.Ed. 48 (1943); *United States v. Balint*, 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922). In fact, the first hint that strict liability in any circumstance might be unconstitutional came in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). As we have seen, strict liability for commercial-fishing violations was firmly established in Alaska law at the time of the constitutional convention, *see Rustad v. United States*, 258 F.2d 563, 567 (9th Cir.), *cert. denied*, 358 U.S. 898, 79 S.Ct. 222, 3 L.Ed.2d 149 (1958); *Doo-Noch-Keen*, 2 Alaska at 628, and remains firmly established for commercial-fishing violations in federal law today. *See United States v. Ayo-Gonzalez*, 536 F.2d 652, 662 (5th Cir.1976), *cert. denied, Gonzalez v. United States*, 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977). The constitutional convention was deeply concerned with the management of the state's fish and game and devoted a number of hours to the question. *See* V. Fischer, *Alaska's*

*Constitutional Convention* 134–37. There is nothing in that discussion, nor in the resulting constitution, critical of strict liability. Under the circumstances, there is simply no basis for concluding that a legislature establishing strict liability for commercial-fishing violations would contravene the state constitution.

In fact, the Alaska State Constitution may have expressly manifested an intent that commercial-fishing violations be strict liability offenses. Alaska Constitution Article VIII § 3 provides that "[w]henever occurring in their natural state, fish, wildlife and waters are reserved to the people for common use."

The committee proposing this provision explained its purpose in part, as follows:

Game fish, wildlife, fisheries, and water are recognized as belonging to the state so long as in a natural state. These resources are subject to a private right *only when they have been acquired or utilized as provided by law.* For example, a private person has no right to buy and sell wild animals in their natural state, but once an animal is taken in compliance with law, it becomes the property of the taker, subject to use or disposition within the law.... [Emphasis supplied.]

6 PACC Appendix 5 proposal 8 at 75; proposal 8A at 98.

The legislature implemented Article VIII § 3 by enacting AS 16.05.920(a) which states:

Unless permitted by this chapter or by a regulation adopted under this chapter, a person may not take, possess, transport, sell, offer to sell, purchase, or offer to purchase fish, game or marine aquatic plants, or any part of fish, game or aquatic plants, or a nest or egg of fish or game.

The Alaska Supreme Court relied on this statute and particularly the fact that it was phrased in the negative to strike down a subsistence defense to violation of a hunting regulation. *See State v. Eluska,* 724 P.2d 514, 515 (Alaska 1986) (" 'unless permitted,' no one has a right to take or possess Alaska game"). The statute and the state constitutional provision strongly support the conclusion that commercial-fishing regulations were intended to be "strict liability" offenses, since no one could lawfully possess fish unless expressly authorized to do so by statute or regulation.

8. The majority holds that the legislature has established a maximum fine of $300 for commercial-fishing "violations." Ironically, the legislature enacted a number of penalty provisions in 1959 governing noncommercial fish and game violations in which no provision for imprisonment was made; thus, these provisions would qualify as "violations" under the Model Penal Code. In each case, the maximum fine exceeds $300. *See, e.g.,* AS 16.05.860 ($1,000 per day maximum fine); AS 16.10.030 (maximum $500 fine). If the legislature did not consider a maximum $300 fine sufficient to deter noncommercial-fishing violations in 1959, it is inconceivable that it would consider a maximum $300 fine sufficient to deter commercial-fishing violations in 1987. The state has argued, and the district court has found, that strict liability is necessary to enforce the fish and game laws. If this is so, the majority's decision will substantially undermine enforcement; a result which the legislature would unlikely have intended. Curiously, the majority does not even address this argument.

Neither *Beran* nor *Reynolds* supports the majority's decision. *Beran* and *Reynolds* depend primarily on a factual conclusion that strict liability supported by a penalty of imprisonment is not necessary to enforce the state's fishing regulations. *Beran,* 705 P.2d at 1290–91; *Reynolds,* 655 P.2d at 1316. Where strict liability is necessary for effective enforcement, it must be sustained. *See Nelson v. State,* 387 P.2d 933, 935 (Alaska 1964). In addition, *Beran* rested on the assumption that strict liability punishable by imprisonment was not in accordance with other provisions of law. 705 P.2d at 1288–90. No similar showing could be made regarding fines and forfeitures. In fact, the Alaska Supreme Court has specifically held that fines and forfeitures, which do not depend on the defendant's degree of culpability, are not even "criminal penalties," as the majority apparently understands that term. *Resek v. State,* 706 P.2d 288, 291–93 (Alaska 1985). The court analogized forfeitures to fines and reasoned: "the forfeiture law does not attempt to tailor the amount of loss suffered through a forfeiture to the degree of culpability-to fit the 'punishment' to the crime. The forfeiture penalty may be high for some, and negligible or non-existent for others who are as deserving or even more deserving of criminal punishment." *Id.* at 292.

Alaska Statute 16.05.720(a) establishes maximum fines but establishes no minimum. Nor does it set out standards for determining what fines would be appropriate in individual cases. Thus, by default, we must look to AS 12.55.-035(a) for this limited purpose. This section makes it clear that "[i]n determining the amount and method of payment of a fine, the court shall take into account the financial resource of the defendant and the nature of the burden its payment will impose. No defendant may be imprisoned solely because of inability to pay a fine." Thus any fine imposed under this section will depend upon a defendant's ability to pay and not on his or her culpability. *See Karr v. State,* 686 P.2d 1192 (Alaska 1984) (interpreting similar language in AS 12.55.045 regarding restitution). It follows that such fines are not criminal penalties. *Resek,* 706 P.2d at 292. Thus, none of the reasons advanced in *Beran* support the majority's decision in this case.